EDGERTON, RESPONDENT, *v.* POWER ET AL., APPEL-
LANTS.

[Submitted May 26, 1896. Decided June 8, 1896.]

PLEADING—*Denial—Negative pregnant.*—The denial in an answer that "the amount of stock" sold by plaintiff to defendants was ever delivered, being pregnant with the admission that all of the stock had been delivered except a fractional portion, is insufficient to support proof of nondelivery.

CONTRACT—*Consideration—Promissory note and contemporaneous agreement.*—The premises recited in a contract were that the plaintiff owned certain stock in a railroad; that it had been agreed that defendant should purchase of plaintiff one-half of his stock at a stated price and that it was desired that the parties should vote their stock as a unit and act in harmony in the management of the railroad. The contractual portion of the instrument recited that in consideration of the premises the parties agreed, first, that the plaintiff should sell and deliver to the defendants one-half of his stock at a certain price for which the defendants should give their note payable six months after date. The balance of the contract was covered by ten other paragraphs containing agreements for pooling and voting the stock, which arrangement was to continue for ten years, though no time was fixed for forming the pool. *Held,* in an action on the note, that the only consideration for the note was the delivery of the stock as provided in the first paragraph, which was complete in itself and independent of the others, and that the nonperformance of the further agreements was not a defense.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION on promissory note. Judgment was rendered for the plaintiff below by Buck, J. Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiff sued the defendants upon a promissory note for $8,000 made by defendants to plaintiff. The answer admits the making and delivery of the note, and seeks to defend by setting up that the note was made in connection with a written contract between plaintiff and defendants dated December 30, 1889, which contract is pleaded in full. The answer alleges that the terms of said contract were the consideration for the note, and that among them it was agreed that the plaintiff was to sell to defendants 277¾ shares of the stock of the Helena, Hot Springs & Smelter Railroad Company, and that plaintiff has never sold or delivered to defendants the amount of the stock agreed to be sold, and that he was not at the time of making the contract, or at any time since, able to comply with its conditions as to the sale of said stock. It is further alleged that part of the terms of said contract were that said railroad should be extended over certain real estate owned by the defendants, and that the railroad was never so extended; that another condition of said contract was that a stock dividend should be declared among the stockholders of the stock then in the treasury, but that said dividend was never declared. The agreement referred to was between Power and Sullivan (these defendants), parties of the first part, E. D. Edgerton (plaintiff), party of the second part, and Sanford and Evans, parties of the third part. It was executed by only Power and Sullivan and Edgerton. The recitals and first paragraph of the contract are as follows:

"Whereas, the said party of the second part is the owner of five hundred and fifty-five and one-half shares of the full-paid and unassessable capital stock of the Helena, Hot Springs and Smelter Railroad Company, a corporation duly incorporated under the laws of Montana; and whereas, the said parties of the third part are the owners of 112½ shares of said capital stock; and whereas, it has been agreed that the said parties of the first part shall purchase of the said party of the second part one-half of the said shares of stock so owned by the said party of the second part at and for the price of eight thousand dollars ($8,000); and whereas, it is desired by all

the parties hereto that the stock now owned by the parties of the second and third parts and the stock so to be purchased by the said parties of the first part shall be voted as a unit; and whereas, it is desired that all of said parties shall act together and in harmony, with reference to the management of the affairs and conduct of the business of said Helena, Hot Springs and Smelter Railroad Company :

''Now, therefore, in consideration of the premises, and of the sum of one dollar to each in hand paid, it is agreed by and between the said parties : First: That said party of the second part agrees to sell to the said parties of the first part, and said parties of the first part agree to purchase of the said party of the second part, one-half of said five hundred and fifty-five shares of the capital stock, at and for the price or sum of eight thousand dollars, for which sum said parties of the first part shall give their note payable to the order of the said party of the second part six months after the date hereof, with interest thereon at the rate of eight per cent. per annum from date until paid.''

Then follow 10 other sections of the contract. The matters contained in these sections are agreements for pooling the stock of the railroad, and voting the same as a unit, extending the railroad to certain lands, and the doing of certain other acts, which need not be further described in detail.

A replication was filed to this answer. Upon the trial the defendants, having admitted the making and delivering of the note, naturally assumed the burden of proof. Defendant Power was called as a witness, and partially examined, whereupon the plaintiff objected to any testimony being introduced by the defendants under the pleadings. The court sustained this motion, except as to the delivery of certain shares of the stock of the railroad company. The court held that the delivery of the stock was the only issue raised by the pleadings. Defendants' counsel asked leave to file a second amended answer. This was denied by the court. The proffered answer appears in the record.

The ruling of the court that the only issue, under the plead-

ings, was the delivery of the stock, was made upon the offer
by the defendants to prove that the agreements set out in the
contract of December 30th, as to pooling the stock, extending
the road, and making a stock dividend, etc., which matters
were part of the contract, were in fact intended to be a part
of the consideration for the note, and that such consideration
had failed. These matters were partially set out in the first
amended answer, upon which the trial was being had, and
were set out in a much more amplified form in the second
amended answer, which the court would not allow to be filed.
It was upon the offer to prove all these matters, and especially
the allegations of the second amended answer, that this ruling
of the court was made. The defendants allege error in the
refusal to allow this proof, and the refusal to allow to be filed
the second amended answer. The examination of the witness
Power then continued until, it seems, attention was attracted
to what the court considered the insufficient denial in the
answer.

The answer simply denied that "the amount of stock" sold
by plaintiff to defendants was ever delivered. The court sug-
gested that this denial was pregnant with the admission that
all of the said stock had been delivered, except an immaterially
fractional portion, and that, therefore, there was in fact, no
substantial denial. The court offered to allow the defendants
to amend their answer so that they might deny that any of
the stock was ever delivered, or that they might state what
amount, if any, was delivered, and what amount was not.
Defendants' counsel declined to make such amendment.

The second amended answer, which the defendants had
tendered, it was contended, did contain a proper denial of the
delivery of the stock; but this second amended answer also
contained all of the allegations as to other matters in the con-
tract forming a part of the consideration for the note, and
these matters were considered by the court as forming no
defense. So the issue between the court and counsel was this:
The court was willing that counsel should amend so as to deny
the delivery of the stock, or a portion of it, which the court

was of opinion was a material issue, but would not allow the counsel to add to this denial all of those other allegations which the court deemed to be immaterial.   Counsel stood upon their position, and refused to amend at all, if they were not allowed to amend as they contended they had a right to do.

The defendant Power had given testimony tending to show that the stock, or a material portion thereof, had not been delivered to him and Sullivan.   The court, being of opinion that the answer contained no denial to support this proof, struck out the whole of Mr. Power's testimony, as not being supported by an allegation in the answer. This left the case without any defense, and the court, as a logical sequence, instructed the jury to find for the plaintiff.   This was done, and judgment entered accordingly.   The defendants appeal from the judgment, and from an order denying a new trial.

*Toole & Wallace, F. N. & S. H. McIntire* and *H. G. McIntire*, for Appellants.

The performance of all the agreements mentioned·in the contract was a condition precedent to the right to demand and enforce payment of the note.   As the agreements were not performed there was no right of action on the note.   (*Plate* v. *Vega*, 31 Cal. 384; *Billings* v. *Everett*, 52 Cal. 661, and cases cited in brief; *Withers* v. *Greene*, 9 How. (U. S.) 213; *Bank* v. *Leonhart*, 25 N. E. Rep. 1099; *Knight* v. *Knight*, 28 Ga. 165; *Boynton* v. *Twitly*, 53 Ga. 214; *Stacy* v. *Kemp*, 97 Mass. 166; *McLaughlin* v. *Clausen*, 24 Pac. Rep. 636; 2 Estee's Pl. pp. 532–533; *Bookstaver* v. *Jayne*, 60 N. Y. 146; *Benton* v. *Martin*, 52 N. Y. 570–574; *Harrington* v. *Stratton*, 22 Pick. 510; *French* v. *Gordon*, 10 Kan. 370; *Pitts* v. *Allen*, 72 Ga. 69; *Hall* v. *Henderson*, 84 Ill. 611; *Bookstaver* v. *Jayne*, 60 N. Y. 150.)   The note and contract of December 30, 1889, being an entire transaction, the reason for the existence of the note and the defandants' liability thereon being contained and explained in the memorandum of agreement, it was error to rule out the defense set up in the amended an-

swer. There was no attempt on the part of the defendants to vary the terms of the note, but merely to show under what circumstances, according to the expressed and manifest intention of the parties, a liability upon the note should accrue. But, assuming for the sake of argument, that the defendants by their pleading and the lines of evidence offered, sought to vary by parol the terms of a written instrument, such pleading and proof were clearly within the exceptions to the rule prohibiting such variance. (Compiled Statutes, First Division, §§ 628, 632; Abbott's Trial Evidence, page 294; 1 Greenleaf on Evidence, §§ 275, 284, note, 285; *Bohn Manufacturing Co.* v. *Harrison*, 13 Mont. 293; Story on Contracts, §§ 480, 481; 2 Parsons on Contracts, §§ 582, 583; 2 Mont. 563.)

*T. H. Carter* and *McConnell, Clayberg & Gunn*, for Respondent.

I. The allegation that the note was delivered in connection with a certain contract in writing, is of itself sufficient to show that the execution and delivery of the note and the signing and entering into the contract were a part of the same transaction. The rule is well established that where a contract is delivered in connection with a promissory note, the note and contract are to be construed together. (*Hubbard* v. *Marshall*, 50 Wis. 322, 327; *Langan* v. *Langan*, 89 Cal. 186; *Zimpelman* v. *Hipwell*, 54 Fed. 848; § 2207, Civil Code of Montana.) Parol evidence was not admissible to show any other consideration for this note except the sale of this stock because of the provisions and recitals of said contract. (*Hubbard* v. *Marshall*, 50 Wis. 327; *Langan* v. *Langan*, 89 Cal. 186; *Zimpelman* v. *Hipwell*, 54 Fed. 848.) See, also, in support of the proposition that parol evidence is not admissable to vary, qualify, contradict, add to, or subtract from the absolute terms of a written instrument. (*Brown* v. *Spofford*, 95 U. S. 474; *Specht* v. *Howard*, 16 Wall 564; *Bank* v. *Dunn*, 6 Pet. 51; *Forsythe* v. *Kimball*, 91 U. S. 291; *Brown* v. *Wiley*, 20 How. 442; Greenleaf on Evidence, §§ 275, 276 and 277;

*Styles* v. *Vandewater*, 4 At. 658; *Fisher* v. *Briscoe*, 10 Mont. 124; Compiled Statutes, First Division, § 628.)

II. Appellant's contention that the performance of the said contract was a condition precedent to the right to demand and enforce payment of this note, is based upon the false position that evidence was admissible to show that the consideration for said note was different from that stated in the contract. For the reason that parol evidence was not admissible to vary the terms of the contract, it was incompetent to show that this note, which contains an absolute promise to pay, was payable upon condition. (Randolph on Commercial Paper, Vol. 1, § 94, and cases cited in note; *Brown* v. *Spofford*, 95 U. S. 474; *Allen* v. *Furbish*, 4 Gray 504; *Underwood* v. *Simonds*, 12 Met. 275; *Union Stock Yards* v. *Western Land Company*, 59 Fed. 49.)

III. The only defense was a failure of consideration. This defense is inconsistent with the claim that the note did not become operative. The evidence offered was "That the payment of the note was conditioned upon the fulfillment by the plaintiff of this promise and the other promises mentioned, and that none of them were fulfilled." The effect of this evidence was not to show that the note never became operative but to attach a condition to the payment of the note, which was not permissable under the circumstances. (*C. & V. R. R. Co.* v. *Parker*, 84 Ill. 613; *DeLong* v. *Lee*, 34 N. W. 613; *Brown* v. *Wiley*, 20 How. 443, and cases cited *supra*.)

IV. That this is a severable contract, see the following authorities : 2 Parsons on Contracts, 6th Ed., page 517; *Pitkin* v. *Frink*, 8 Met. 12; *Waterhouse* v. *Kendall*, 11 Cush. 128; *Traver* v. *Stevens*, 11 Cush. 167; *Hodgkins* v. *Moulton*, 100 Mass. 309; *McGrath* v. *Cannon*, 57 N. W. 150 and cases cited.

V. There was no error in striking out the evidence as to the delivery of this stock. The answer merely alleges that the amount of stock was not delivered. This was an allegation of a negative pregnant and presented no issue. (Bliss on Code Pleadings, § 332; *Power* v. *Gum*, 6 Mont. 5.) The gen-

eral allegation that no consideration was received for said note does not cure the defective allegation that the defendants did not receive the amount of stock. (*Parker* v. *Jewett,* 55 N. W. 56.)

DE WITT, J.—We are satisfied that the denial in the answer that "the amount of stock" had been delivered was a negative pregnant, for the reason set forth by the district court, and quoted in the statement preceding this opinion. The court was therefore justified under such a denial, in refusing to allow testimony as to the nondelivery of the stock. The court offered to allow counsel to amend this denial so that it would be well pleaded. Counsel refused to do so unless they were also allowed to allege in their proffered second amended answer that certain matters mentioned in the statement above, other than the delivery of the stock, were also part of the consideration for the note. The court held that this was an attempt to vary the terms of a written instrument, viz, the contract of December 30th. This matter is the gist of the whole case. The note was given December 30th, 1889, and it was given in connection with the contract of the same date. Appellants contend that it is not varying the terms of a written instrument, to wit, the promissory note, to show, *aliunde* the note, what the real consideration was. Their counsel cites many authorities upon this point. This may be conceded. Then he proceeds to show the real consideration by pleading the contract of December 30th. This contract is admitted by the respondent. Then the next question is, what is the real consideration for the note, as shown by the written ·contract? If the real consideration be shown by the contract of December 30th, then we have that contract as a written instrument in which to find the consideration. (*Pitts* v. *Allen,* 72 Ga. 69.)

We must therefore look to the contract of December 30th to ascertain the real consideration. Was that consideration the delivery of the stock, or was it the delivery of the stock and the performance of all the other terms of that contract?

The district court said it was the delivery of the stock only. This point was raised in several ways during the trial, and is the gist of this controversy. We must therefore proceed to construe the contract.

The contract says, "In consideration of the premises and the sum of one dollar to each in hand paid, it is agreed," etc. Appellants make the point that all the agreements of the contract are in consideration of the premises. The premises are set forth in the recitals preceding the contractual portion of the instrument. Referring to the contract as set out in the statement of the facts preceding this opinion, it is observed that the recitals consist of statements of some facts, and of some desires of the parties. The facts recited are that Edgerton is the owner of 555½ shares of the railroad stock, and Sanford and Evans of 112½ shares, and that it had been agreed that Power and Sullivan shall purchase of Edgerton one-half of his said shares, at the price of $8,000. After stating these facts, the recitals then set forth that it is desired by all parties that the stock owned by Edgerton and Sanford and Evans, and the stock purchased by Power and Sullivan, shall be voted as a unit, and that all of the parties shall act together and in harmony in the management of the railroad, etc. These facts and these desires of the parties being recited as premises, the contract goes on to state that in consideration of the premises the parties agree to certain things. What they agree to is set forth in a series of eleven paragraphs, numbered consecutively from first to eleventh. The first is as follows:

"That said party of the second part agrees to sell to the said parties of the first part, and said parties of the first part agree to purchase of the said party of the second part, one-half of said five hundred and fifty-five and one-half shares of capital stock at and for the price or sum of eight thousand dollars, for which sum said parties of the first part shall give their note, payable to the order of the said party of the second part six months after the date hereof, with interest thereon at the rate of eight per cent. per annum from date until paid."

Then the contract goes on and sets forth the ten other paragraphs, containing the other agreements which the parties made. Paragraph 1. certainly very plainly sets forth in writing that the consideration of the note is the delivery of the one-half of the 555½ shares of the stock of the railroad company. It has already been recited that such agreement had been made. The fact that it had been made is one of the premises of the contract, as above noted. The other premises were the desire of the parties to operate the railroad in harmony, etc. If the premises, as the appellants argue, are part of the consideration of the note, then the only premise, other than the contract for the delivery of the stock, is what we have noted as the desires of the parties. Those desires were to pool the stock, run the road over certain lands, pay a stock dividend, etc. By reason of such premises, including what we call the "desires of the parties," they go on and state what they shall do; and, first, Edgerton and Power and Sullivan, in the first paragraph, make their contract as to the sale of the stock for $8,000. Passing this paragraph as complete in itself, we come to the other paragraphs, as to pooling the stock, etc. We are of opinion that the agreements contained in this contract are clearly separable. The first paragraph is complete in itself, and is independent of the others. It is observed that there is no time set when this pool shall be formed. The contract of pooling and operating the stock as a unit, and handling the road in harmony, is to run for ten years, but the note is payable in six months. Therefore, how can the performance of further agreements following paragraph 1. be a consideration for the note, and how can their nonperformance be a defense, when the note is payable absolutely nine and one-half years before the other acts contracted for are to be fully performed? The parties could not have contemplated such an anomaly.

We are of opinion that the consideration of the note was the delivery of the stock, and perhaps, also, the entering into the further agreements, but not the performance of the same. If the entering into the further agreements were also a part of

the consideration of the note, that consideration was performed, because the further agreements were entered into. This branch of the case we will examine.

It is true that it is quite clear that the parties desired the accomplishment of all the matters set forth in the contract of December 30th, and in paragraphs following paragraph 1; and it is true that they also contracted for the accomplishment of their desires in that respect. But these matters could not be accomplished, nor, indeed,° could they be intelligently contracted for, unless Power and Sullivan obtained the stock to put into the pool. The obtaining of that stock was a prerequisite to the accomplishing of the other matters set forth. To be sure, the accomplishment of those matters was within the. contemplation of the parties when they made the contract as to the stock. It may even be conceded that Power and Sullivan would not have bought the stock unless all the parties had consented that they would make an agreement for the accomplishment of the other matters. But Power and Sullivan *did* buy the stock, and they, with Edgerton, *did* make an agreement as to the other matters. It may probably be, indeed, conceded that the consideration of the note was the delivery of the stock, and the entering into the further agreements. Let it be understood that we say the *entering into the further agreements*, not the *performing* of them; that is to say, the promising to perform may have been a part of the consideration of the note, but the performing of the same could not. have been. Then the consideration of the note was paid, if the stock was delivered, and the further agreements were made; and on this construction of the situation, if the stock were not delivered or the further agreements were not made, the consideration failed. But the court offered to allow appellants to prove that the stock was not delivered, if they would make a proper allegation of this in their answer. That, as above noted, they declined to do, and, they declining to make this denial, the court struck out their proof.

That the further agreements were made was, in effect, in evidence, because the fact was alleged, and not denied by the

pleadings.    Thus, while the *making* of the further agreements
may have been a part consideration of the note, we cannot
consent that their *performance* was also a part consideration.
The contract, in its whole scope, denies such interpretation.
The sale and delivery of the stock were preliminary to the
performance of the other agreements, and preliminary, indeed,
to a promise to perform, because it was first necessary that
Power and Sullivan have said stock before they could make
the pooling and other agreements.    Again, we observe that no
time was set for the performance of any of the other agree-
ments.    One of the other agreements as to an option was lim-
ited to one year, and the whole pooling contract was to run for
ten years.    The performance of such acts at such times never
could have been intended as a part consideration, or their non-
performance as a defense, to a note payable absolutely in six
months.    These views do not deny to defendants a remedy for
any breach of the contract of December 30th, as to any agree-
ments therein other than the sale of the stock, if any such
breaches exist.    All we hold is that any nonperformance of
such agreements is not a defense to the note, because the per-
formance was not, by the terms of that contract, a considera-
tion for the note.

By reason of these views the judgment and order of the dis-
trict court must be sustained.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.