B. F. STURTEVANT COMPANY, Appellee, v. LEMARS GAS COM-
PANY, Appellant.

**SALES:** Implied Warranty—Reasonable Fitness.   An implied war-
1: ranty of *reasonable fitness* accompanies the purchase of an un-
inspected article by a buyer who expressly makes known to the
vendor the *use* to which the article will be put, and the *condi-
tions* under which it will be operated, and who relies on the
vendor's skill and judgment.

**SALES:** Divisibility of Contract.   A contract for the purchase of
2 two articles, separately priced, and intended for separate and
independent use, is *divisible*, even though both articles were
delivered together, under one acceptance, and at an aggregate
price.

**SALES:** Election of Remedies—Rescission (?) or Damages (?)   A
3 buyer may rescind for breach of warranty, or may retain the
article and sue for damages consequent on the breach.

*Appeal from Plymouth District Court.*—C. C. BRADLEY,
Judge.

FEBRUARY 23, 1920.

ACTION on account for merchandise sold and delivered
by plaintiff to defendant.   Defendant pleaded rescission of
the contract as to a part of the machinery, and claimed
damages on account of defects in a part thereof.   There
was a directed verdict for plaintiff, and defendant appeals.
—*Reversed.*

*Nelson Miller,* for appellant.

*McDuffie & Keenan* and *J. U. Sammis,* for appellee.

STEVENS, J.—I. Plaintiff, a corporation, manufactures
and sells certain kinds of machinery, used in artificial gas
plants.   The defendant corporation owns and operates a
gas plant at LeMars, Iowa.   Plaintiff alleg-
ed in his petition that, on or about Septem-
ber 28, 1915, it sold and delivered to the de-
fendant, at LeMars, Iowa, "One No. 1 steel

1. SALES: im-
plied warranty:
reasonable fit-
ness.

pressure blower, with steel plate sub-base and motor, 110 volts, 60 cycles, right-hand up-blast discharge, at the agreed price of $91; also, one No. 4 special extra heavy gas blower and motor, 110 volts, 60 blower and motor, to be re-paired by plaintiff, and cycles, at the agreed price of $380, and amounting in the aggregate to the sum of $471;" and that payment has been refused by defendant.

For answer, defendant admitted the purchase and de-livery of the machinery described, but avers that the No. 4 gas blower and motor were purchased for use in its gas plant; that, before ordering same, defendant fully advis-ed plaintiff of the kind of machinery required, the condi-tions under which it would be operated, and the purpose for which it was to be used; that plaintiff manufactured the blowers and motors and represented that they had ex-pert knowledge of the same, that the machinery delivered would do the work for which it was desired, and that it was suitable and well adapted thereto; but that, "when said machinery was delivered, and the operation of the same began, without any fault or neglect of the defendants the said machinery utterly failed to do said work; that it could not sustain an even pressure for sufficient length of time, would vibrate and shake and get out of repair, so as to make the operation of the same impractical; that it was not reasonably fit or adapted to do said work, or to do the work for which it was built; that said motor and blower in operation would shake and vibrate so that it tore itself to pieces; that the coupling or connecting parts between the motor part and the blower part of said machine would go to pieces, and could not be kept intact for more than a short period at a time, necessitating shutdowns for repairs; that it did not run smoothly and evenly, but sometimes would run at a high speed, and then die down to almost no speed at all, and barely keep itself in operation; that, through such defective and intermittent operation, it could

not and did not sustain or maintain a pressure on defendants' generator for which it was purchased; that said machinery could not be used by the defendants, because of said defects in operation, and they were compelled to procure other machinery to do the work for which it was ordered."

Defendant further alleged that, after requesting and demanding that plaintiffs put the No. 4 blower and motor referred to in petition in a condition to do the work required, and their refusal to do so, it rescinded the contract, and returned same to plaintiffs.

In a separate count of plaintiff's answer, and by way of counterclaim, it alleged that, on about April 6, 1914, it purchased a No. 4 turbine engine and gas blower of plaintiff, at an agreed price of $385; that, before receiving same, defendants informed plaintiff fully of the purpose for which same was wanted, the work required, and the conditions under which it would be operated; that they were a public service corporation, engaged in selling gas for heating, lighting, and power purposes; that they consulted with plaintiffs, and were advised thereby that said machinery was suitable to do the work required; that it would run smoothly and evenly, and was well adapted to the work for which it was built and intended: but defendant avers that it did not run smoothly and evenly; that it failed to do the work for which it was purchased; that it would shake, vibrate, and pound so fiercely that it continually tore itself to pieces, getting out of repair, and requiring frequent shutdowns on account thereof; that the same wholly failed to do the work for which it was purchased, without fault or neglect on the part of the defendants; that it was not reasonably fit or adapted to the work for which it was intended; that defendant frequently requested plaintiff to place same in repair, which it failed to do; that the defects in said machinery were concealed, and

not known to defendant until about four months after it was installed, when it was manifested by the manner of its operation. It therefore asks judgment for damages.

As alleged in defendant's answer, the No. 4 blower and motor therein described were received by defendant on December 31, 1915, and returned in March, 1916. The No. 1 blower and motor proved satisfactory, and were retained by defendant.

For reply to the allegations of defendant's answer, plaintiff admitted the sale and delivery of the turbine engine and blower, and that it was paid $385 therefor. They allege that same was improperly and unskillfully installed and operated by defendant; that defendant has retained said machinery without complaint, and has thereby waived its claim for damages, and is estopped to plead or prove any of the allegations of its counterclaim; that the No. 4 gas blower and motor last purchased were improperly and unskillfully installed, upon an insufficient foundation; that defendant negligently and wrongfully altered parts of the machinery, and unskillfully handled and operated said machine; and that, if it failed to work, it was due to the negligence, unskillfulness, and incompetency of defendant, and to no defect in the machinery. At the conclusion of plaintiff's evidence, a motion was offered by plaintiff for a directed verdict, which was sustained.

The principal points made by plaintiff in its motion, and in argument in this court, are as follows: (a) That all of said machinery was sold and delivered without warranty, express or implied; (b) that the evidence offered wholly failed to sustain the allegations of defendant's answer; (c) that the No. 4 motor and blower were not defective, and were reasonably suitable and fit, when properly operated, for the purpose intended; (d) that the contract for the purchase of the No. 1 steel pressure blower and motor and the No. 4 blower and motor was entire and indivisible;

that only a portion of the machinery has been returned; and that defendant has not been placed *in statu quo,* and no rescission of the contract is, therefore, shown; (e) that defendant retained the machinery referred to in defendant's counterclaim, without offer to make return thereof, and without complaint, since it was delivered, and is estopped to claim damages on account thereof; and that the evidence wholly fails to sustain the counterclaim.

The contract for the purchase of all the machinery in question is made up of various letters written by the respective parties hereto, and covering a long period of time. On account of the number and extent thereof, and deeming it unnecessary to a proper decision of the only question presented for review, we refrain from setting out this correspondence. It appears, however, from a careful reading thereof, that the order for each separate unit was forwarded, and finally accepted by plaintiff, after being fully advised of the use defendant desired to make thereof, the conditions under which it would be operated, and after the submission by plaintiff of drawings and plans, illustrating the machinery, and recommendations as to its adaptability for the purpose intended. Defendant seems to have carefully explained working conditions, and sought and received the counsel and advice of plaintiffs as to the kind of machinery required. The machinery delivered was selected and recommended by plaintiff, and purchased by defendant without previous opportunity for inspection. What constitutes an implied warranty, and when same will arise, has frequently been the subject of discussion and decision by this court. The doctrine is well stated in *American P. P. Co. v. American P. A. Co.,* 172 Iowa 139, at 152, as follows:

"The distinction between the cases in which a warranty is implied and where it is not implied is that, in one case, a person buys a distinct thing, an exact article, and gets the thing he bargained for. He cannot complain that it

does not accomplish the purposes for which he purchased it, although he communicated that purpose to the seller. In such cases, he takes his own risk as to the fitness of the thing for the intended purpose, and no warranty is implied. This rests upon the thought that no one can complain of another, or charge him with fault, who gives to him the exact thing which he bargained to give, although it is not fit for the purposes for which the purchaser bought it. The other class of cases is where one buys an article, to be used for a certain purpose, and the seller undertakes to furnish him the article required. There is, in such a case, an implied warranty that it is fit for the purposes for which it is bought. The rule is laid down generally that, where a known, described, and definite article is ordered of a manufacturer, although it is said to be required by the purchaser for a particular purpose, still, if the known, defined, and described thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. The distinction is between the manufacture and supply of an article to satisfy a required purpose, and the manufacture or supply of a ·specified, described, and defined article. In one case, there is an implied warranty; and in the other, there is none."

See, also, *Blackmore v. Fairbanks, Morse & Co.,* 79 Iowa 282; *Davis & Sons v. Sweeney,* 75 Iowa 45; *Checkrower Co. v. Bradley & Co.,* 105 Iowa 537; *Parsons B. C. & S. F. Co. v. Mallinger,* 122 Iowa 703; *Heath v. Albrook,* 123 Iowa 559; *Conkling v. Standard Oil Co.,* 138 Iowa 596; *Loxtercamp v. Lininger Imp. Co.,* 147 Iowa 29; *Pew Co. v. Karley & Titsenor,* 154 Iowa 559; *Pew Co. v. Karley & Titsenor,* 168 Iowa 170.

We think that, from the facts shown, a warranty may be implied that the machinery was suitable and reasonably fit for the purpose intended. Evidence offered on behalf of defendant tended, to some extent, to show that none of

the machinery, except the small motor and blower, which are not complained of, was reasonably fit or suitable for the purpose intended.  Whether its failure to do the work was due to defects in the machinery or to the unskillfulness and incompetency of defendants in the installation and operation thereof, is a question with which we have nothing to do.  We have only to determine whether, upon the record made, the court erred in sustaining plaintiff's motion for a directed verdict.

II.  But plaintiff also contends that the contract for the machinery described in its petition is entire and indivisible; that the order therefor was accepted in the same letter, and the machinery delivered and received by defendant at the same time; and that, by failing to return all of the machinery, plaintiff has not been placed *in statu quo*, and defendant cannot, therefore, rely upon a rescission of the contract.  It is not claimed by appellant that the No. 1 blower and motor, which were not returned, were defective, or not adaptable or fit for the use intended.  The question is, ordinarily, largely a matter of intention.  The units were to be used separately and independently; and it appears from the correspondence between the parties that the units were separately priced, and that the delivery thereof, together, was not for the purpose of carrying out any part of the agreement or contemplated purpose of the parties.  Plaintiff, in its petition, sets out the separate, agreed value of the respective units, and the only place in the correspondence in which the aggregate price is mentioned, is in the letter accepting the order.  The amount therein named is the sum of the respective prices previously quoted for the two units.

2. Sales: divisibility of contract.

The only basis of plaintiff's claim that the contract was entire and inseparable is that the final acceptance of the two orders was made at the time, and fixed an aggregate

price, and that the units were delivered together. It has often been held that a contract is not entire and indivisible because embraced in one instrument (*Straus v. Yeager*, 48 Ind. App. 448 [93 N. E. 877]; *Edgerton v. Power*, 18 Mont. 350 [45 Pac. 204]), and that it is not necessarily severable because embraced in more than one instrument. *Sprigg's Admr. v. Rutland R. Co.*, 77 Vt. 347 (69 Atl. 143); *Waldron v. Canadian Pac. R. Co.*, 22 Wash. 253 (60 Pac. 653). Referring to this question, the court, in *Pacific Timber Co. v. Iowa W. & P. Co.*, 135 Iowa 308, said:

"As a general rule, it may be said that a contract is entire, when, by its terms, nature, and purpose, it contemplates and intends that each and all of its parts and the consideration shall be common, each to the other, and 'interdependent.' On the other hand, it is the general rule that a severable contract is one in its nature and purpose susceptible of division and apportionment. The question whether a given contract is entire or separable is very largely one of intention, which intention is to be determined from the language the parties have used, and the subject-matter of the agreement. The divisibility of the subject-matter or the consideration is not necessarily conclusive, though of aid, in arriving at the intention."

See, also, *Murphy v. Williamson*, 180 Iowa 291; *United States Tr. Co. v. Incorporated Town of Guthrie Center*, 181 Iowa 992; *Quarton v. American Law Book Co.*, 143 Iowa 517; *Bamberger Bros. v. Burrows*, 145 Iowa 441; *Sprigg's Admr. v. Rutland R. Co.*, supra; *Straus v. Yeager*, supra; *Stearns Salt & Lbr. Co. v. Dennis Lbr. Co.*, 188 Mich. 700 (2 A. L. R. 638, and note).

The witnesses on behalf of defendant went into considerable detail in describing the machinery referred to in plaintiff's petition and defendant's counterclaim, and in pointing out the defects therein, as well as its inadaptability for the purpose intended. It will serve no good purpose

for the court to review this evidence, further than to say
that, in our opinion, it was sufficient to make out a prima-
facie case for defendant, and entitled it to have the issues
submitted to the jury. It is true that some considerable
time elapsed before defendant returned the blower and mo-
tor; but, during the intervening period, there was corres-
pondence between the parties, and a representative of plain-
tiff, at the demand of defendant, visited LeMars, and under-
took to operate the machinery and place it in condition to
do the work required. We cannot say, as a matter of law,
that defendant did not return the machine within a rea-
sonable time.

The contract was divisible, and defendant could not
properly rescind the same, so far as it applied to the smaller
machine, nor was it estopped by anything appearing in the
record to set up a claim for damages on ac-
count of the alleged defects in the turbine
engine and blower purchased in 1914. It
had an election of remedies. It could ei-
ther return the machinery and recover the purchase price, if
paid, or it could retain the same and sue for damages. It
elected to do the latter. Without expressing an opinion
upon the merits of defendant's claims, we think the issues
should have been submitted to the jury. For this reason,
the judgment of the court below is—*Reversed*.

3. SALES:
election of rem-
edies: rescis-
sion (?) or
damages (?)

WEAVER, C. J., LADD and GAYNOR, JJ., concur.