## International Harvester Company of America v. Porter, et al.

(Decided October 27, 1914.)

### Appeal from Ohio Circuit Court.

Sales—Warranties—Implied Warranties.—Where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer, the law implies a warranty of fitness for particular use.

H. P. TAYLOR and HUMPHREY, MIDDLETON & HUMPHREY for appellant.

M. L. HEAVRIN, J. M. PORTER, E. M. WOODWARD and A. D. KIRK for appellees.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

This is a companion case to International Harvester Company v. Bean, 159 Ky., 842.

W. E. Porter was engaged in the transfer business, transporting passengers and their baggage, and express and mail, between Beaver Dam in Ohio County and Morgantown in Butler County. Negotiations between him and agents of the International Harvester Company resulted in his agreeing to purchase an automobile for use on his transfer line. Porter knew comparatively nothing concerning automobiles, but he informed the company's agents fully as to the use for which he desired the machine, the character of the roads and route to be traversed, and one of the company's agents selected the particular type of machine which was supposed to be best adapted to that class of service.

Pursuant to arrangements made with the company's agent, W. E. Porter sent his son, J. E. Porter, to Evans-

ville for the automobile; and J. E. Porter and one of the company's agents drove it from Evansville to Beaver Dam. On their arrival there on the night of June 5, 1912, Porter gave the agent his check for $286.00, payable to the Harvester Company, and signed and delivered to the agent two notes in the sum of $287.00 each, in payment for the machine. His son, J. E. Porter, at the request of the agent, had signed these notes before leaving Evansville.

It seems that a short time before Porter bought this automobile, one L. B. Bean, of Hartford, had bought one from the Harvester Company, and at the same time was granted or promised some kind of a sales arrangement by which he was to receive a commission on all sales of automobiles made by the company in that county. Bean, when he learned that Porter was going to buy a machine, asserted the right to commissions on the sale. So, after the delivery of the automobile to Porter, the Harvester Company's agent to whom the notes had been delivered by Porter took the notes to Bean and delivered them to him, taking in exchange therefor Bean's two notes in the sum of $230.00 each, thus making Bean's commission $114.00.

The automobile purchased by Porter failed to perform the service for which he purchased it; and after endeavoring for some five or six weeks to make it do the work for which he bought it, he became convinced that it was worthless, and tendered it back to the company, demanding a return of the money paid and a cancellation and return of his notes; and upon the failure of the company to comply with this demand, he brought this suit in equity in the Ohio Circuit Court for rescission of the sale.

Having learned a few days before he filed the suit that Bean was holding the two notes for $287.00 which he had executed in payment for the automobile, Porter made Bean a defendant also.

Bean answered alleging that the agents of the Harvester Company represented to him that they would not deliver the machine to Porter unless he (Bean) secured the payment therefor, and that in order to assist plaintiff, Porter, in obtaining the machine and as an accomodation merely, he consented to have Porter's notes made payable to him and executed to the company his notes in lieu thereof. He did not undertake to explain why it was that while the two notes of Porter's which he received

were for $287 each, the two notes given by Bean to the Harvester Company were for only $230 each. He made his answer a cross-petition against the Harvester Company, and prayed that if Porter's notes in his hands were canceled, his notes in the possession of the Harvester Company should also be canceled.

The chancellor canceled Porter's notes in Bean's hands, and canceled Bean's notes in the possession of the Harvester Company; gave Porter judgment against the Harvester Company for $286, the amount paid by him in cash upon the machine; and adjudged the machine to be the property of the company. From that judgment the company appeals.

1. It is conceded by appellant that only three questions are presented upon this appeal: (1) to whom did the company sell the automobile; (2) was there any warranty in connection with the sale; (3) and if so, was there a breach of the warranty?

It is the contention of appellant company that it did not sell the machine to Porter; that it sold to Bean, and Bean sold it to Porter. But we do not think the proven facts bear out this contention.

Porter emphatically denies that Bean ever had anything to do with the sale of the automobile to him, or that he even knew that Bean held his notes until a few days before the filing of this suit, and in this he is corroborated by Bean. Whether Bean's name appeared as payee on the notes executed by Porter at the time he signed them, Porter says he does not know; that he wrote the check and signed the notes by the light of a lantern, using the fender of the automobile as a place to write upon, and he did not notice the notes closely.

The proof shows that three agents of the Harvester Company negotiated with Porter from time to time concerning his purchase of the machine; that it was brought from Evansville by one of the company's agents to Porter's home; that there the agent received Porter's check and the two notes, in payment for the machine; that Bean had no conversation with Porter concerning the matter prior to the sale; and the weight of the evidence, therefore, shows a sale by the company to Porter.

2. Was there a warranty in connection with the sale? It has been seen that Porter in the course of the negotiations with the company's agents informed them of the particular use for which he desired the automobile, and of the character of the roads to be traversed; that he

knew little or nothing concerning automobiles, but relied upon the agents of the company to select for him such type of machine as was best adapted to his requirements. Under these circumstances, the law implies a warranty of fitness for the particular use.

It was said by the court in International Harvester Company v. Bean, 159 Ky., 842:

"The rule governing sales of machinery for a particular use is that approved by this court in Marbury Lumber Company v. Stearns Mfg. Co., 107 S. W., 200, 32 R., 739, quoting from Section 988 of Benjamin on Sales, viz.: 'Where a manufacturer or dealer contracts to supply an article which he manufactures or produces or in which he deals, to be applied to a particular use, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an implied warranty that it shall be reasonably fit for the purposes to which it is to be applied.' See Clarke v. Johnson Foundry Company, 42 S. W., 844, 19 R., 973; 15 L. R. A. (N. S.), 855 note; 35 Cyc., 399, note 37; 102 A. S. R., 620."

There was, therefore, a warranty of fitness for the particular use for which Porter bought the machine.

3. Was there a breach of the warranty? The proof on this point shows that the machine never made a single satisfactory trip from Beaver Dam to Morgantown; that on numerous occasions the company sent men to examine it, and to try to make it perform the service for which it was purchased, but that they were unable to do so. Appellant company contended, and introduced some proof to support its contention, that J. E. Porter, who drove the machine, did not understand handling it, and that properly handled it would have given satisfactory service. The weight of the evidence, however, is that the machine was not reasonably adapted to the use for which Porter purchased it; and the chancellor was right in adjudging a rescission of the sale.

Judgment affirmed.