GEORGE E. PEW COMPANY, Appellant, v. KARLEY & TITSENOR et al., Appellees.

**SALES: For Particular Purpose—Implied Warranty.** A warranty is 1 "implied" when the known circumstances surrounding the parties at the time of the sale, or the nature of the thing sold, are such that the law assumes that the parties intended that the buyer should be protected, in addition to the contract of sale, by a farther implied contract.

PRINCIPLE APPLIED: Defendant, operating a moving picture show and having no knowledge of electric light plants, was purchasing light. Plaintiff, assuming expert knowledge, on which defendant relied, sold to defendant under written order an electric light plant under assurance that it would be fully sufficient to meet defendant's needs, of which plaintiff had full knowledge. *Held*, a warranty would be "implied" that the plant so furnished would be reasonably adequate and fit to meet the needs for which it was purchased, though the written order warranted that the plant "was of good material and would do good work when properly operated."

**APPEAL AND ERROR: Law of Case—Re-trial—Second Appeal.** 2 The opinion delivered on a former appeal is the "law of the case."

PRINCIPLE APPLIED: On a former appeal the court held that evidence of an implied warranty was erroneously excluded. On an appeal from a re-trial, *held*, the only question left open

is whether the evidence in the record is sufficient to establish the said warranty.

**SALES:** Delivery and Acceptance—Intention. Whether there has 3 been a "delivery" or "acceptance" which will operate to pass title is ordinarily a question of intention.

PRINCIPLE APPLIED: Defendant purchased an electric light plant, under such circumstances, as claimed by him, that an implied warranty of adequacy to meet certain purposes would be implied. The plant was set up in defendant's place of business on a foundation prepared for that purpose. Both parties carried on a long line of efforts to make the plant work. A new engine was substituted for the one first furnished. Defendant finally ordered plaintiff to remove the plant. There was evidence that at or before the time the plant was set up, plaintiff told defendant that if the plant did not do the work, defendant need not pay. *Held,* not to constitute delivery by plaintiff or acceptance by defendant, though the plant had been put into the manual possession of defendant.

*Appeal from Plymouth District Court.*—HON. DAVID MOULD, Judge.

SATURDAY, DECEMBER 19, 1914.

ACTION in equity to foreclose a mechanic's lien. On trial the court found for the defendants and plaintiff appeals. The material facts are stated in the opinion.

*McDuffie & Keenan,* for appellant.

*Nelson Miller,* for appellees.

WEAVER, J.—The petition states, in substance, that under a written contract with the defendants, plaintiffs furnished them a certain electric engine, with specified accessories, to be placed in and used in connection with a building owned by one of the defendants in the city of Le Mars; and that a claim for mechanic's lien for the agreed price of said improvements had been duly filed. They further allege that defendants refuse to pay the contract price and pray a de-

cree for enforcement of the lien. Defendants deny the claim thus made against them. They admit, however, giving the written order referred to in the petition, but say that prior to giving the same they had been conducting a moving picture show in said building, and in operating the same they made use of electric power furnished by the Le Mars Water and Light Company and were so using it when plaintiff proposed to them to put in a private electric plant. They further aver that they had no knowledge of electric light plants and plaintiffs represented and warranted that the engine and dynamo to be furnished and installed by them would be of sufficient capacity to supply their needs, both for lighting purposes and for their use in the operation of their lamps for the production of pictures; and that defendants, relying upon said representations and warranty, gave plaintiffs an order for a six-horse power engine, which order was later so changed as to call for an engine of nine-horse power. They further aver that when plaintiffs installed said engine and undertook to make it do the work it utterly failed to produce or furnish the required light and power. They also deny that the machinery was ever delivered to them or that they ever accepted the same. For a further answer they deny that said machinery has been attached to or in any manner has become a part of the building or real estate and deny that it constitutes an improvement for which a mechanic's lien can properly be allowed.

After hearing the testimony offered on these issues, the trial court entered a decree in which it is found that plaintiffs were informed of the purpose for which the machinery was desired by defendants and induced defendants to believe that it would do such work, but that in fact it failed to comply with the representations. It was also further found that there was never a completed delivery of the machinery and that defendants never had in fact accepted it. Upon these findings plaintiff's bill was dismissed.

I. The point most insistently urged for a reversal is that the case presented by the record comes within the rule that

when a known and described article is ordered of a manu-

1. SALES: for particular purpose: implied warranty.

facturer or dealer, then, even though the purchaser states that he desires such article for a particular use or purpose, there is no implied warranty that it will perform the service for which he desires or intends it. The soundness of the rule as applied to an appropriate state of facts is to be admitted. If A applies to a dealer saying that he wishes to buy an engine of a given description and capacity with which to operate a corn-sheller or power-pump or other piece of machinery and the dealer supplies him with the very thing for which he asks, there is, of course, no implied warranty that the buyer will find the engine sufficient for his purpose, for the manifest reason that he obtains precisely what he bargains for and if it does not answer his purpose it is not because of the mistake, default or misrepresentation of the seller but because of his own mistake or lack of judgment as to the engine which would perform the desired service. But if he goes to the manufacturer or dealer, describing the kind of work to be done or the result he desires to accomplish and such manufacturer or dealer professes to be able to supply an engine or machinery which will do it, and the buyer is thereby induced to give him an order therefor, then there is a warranty that the machine or thing so furnished is reasonably adapted to the work for which it is procured even though the order particularly defines and describes it.

That the case before us comes within the last mentioned principle rather than the former is not an open question on this appeal. That question was before us upon a former appeal where we had to consider this very issue. See *Pew v. Karley*, 154 Iowa 559. On the first trial, the court below adhered to the view of the law for which appellant's counsel now contends and refused to admit testimony that plaintiff knew the purpose for which the machinery was required or assured defendants that it would do the work, and held that the express warranty found in the writing that the thing

ordered "was of good material and would do good work when properly operated" rendered incompetent the oral evidence offered. Upon the point thus made we there said the trial court "plainly erred. Notwithstanding an express warranty embodied in an order for furnishing machinery that it shall be of good material and efficient as a piece of machinery, there may be an implied warranty that it will accomplish certain results or be adequate for a specified purpose." To the same point it was further said, "The offered evidence would have tended to show that plaintiff undertook to furnish machinery which would give them adequate light, having knowledge of the purpose for which the light was desired." For the error in ruling out the evidence the case was reversed and has since been re-tried. On the new trial, the defendants' evidence strongly tended to show that plaintiff sought out the defendants, who were operating their plant with electricity supplied by another company, suggested to them the advisability of having their own power and light and proposed to put in an engine and dynamo. The member of the firm who inaugurated the negotiation professed to have more or less technical education and experience and assured defendants of the entire sufficiency of the machinery they would furnish for the work which defendants required. Upon these assurances, they secured defendants' order for a six-horse power engine and dynamo and undertook to place or install the plant in working order in defendants' building in Le Mars. It is shown very clearly that upon putting it to practical test it failed to operate with efficiency. A nine-horse power engine was then substituted. There is a dispute whether this was done at the suggestion of plaintiff or defendants, but we are inclined to the view that it came from plaintiff, who was still trying to make the plant operate successfully. The larger engine also failed to operate satisfactorily and defendants finally demanded that plaintiffs remove the outfit they had placed in the building. Thereupon this litigation ensued. There is, of course, radical conflict in the testimony as to many

of the material facts, but in most respects the theory of the defendants has the better support. Their testimony in respect to facts from which plaintiff's promise to supply machinery adequate for the desired purpose is found or implied is well corroborated by other witnesses as well as by many of the admitted circumstances.. If plaintiff did not consider itself bound to do anything more than to furnish an engine and dynamo of particular description and designated horse power, it is difficult to explain why they assumed to install the machinery and test its operation. The failure of the machinery to do the work appears to have manifested itself when the plaintiff or its agents were attempting to operate and demonstrate it the same as when defendants tried it, and we hold with the trial court that the record sufficiently sustains the claim that plaintiff did undertake to supply machinery which would produce the requisite power to operate defendants' picture machines and for the illumination of the premises, and that the machinery furnished by them did not prove sufficient for that purpose.

As we have already suggested, the law of the case as applied to these facts is fixed and settled for the purposes of this appeal by our holding when the case was first before us. Such being our view, it is unnecessary for us to review the authorities cited by appellant upon the general rule of law on the question when a warranty will or will not be implied in the sale of machinery. So far as this branch of the case is concerned, the only question which the former appeal leaves open to discussion is whether the evidence excluded and disregarded on the first trial but now in the record is sufficient to show plaintiff's undertaking to provide machinery of the power necessary to operate the plant, and, as we have already said, we must so hold.

2. APPEAL AND ERROR: law of case: re-trial: second appeal.

II. Does the record sustain the finding of the lower court that there was no completed delivery of the machinery

or acceptance by the defendants? Plaintiff asserts that the completed delivery is conclusively shown by the record but we cannot so hold. Whether there has been a delivery or acceptance which will operate to pass title to a purchaser is ordinarily a question of intent of the parties and it does not necessarily follow that a change of manual possession or custody proves either delivery or acceptance. Intent is shown sometimes by words and often even more incontestably by the conduct of the parties. Applying that test we are here also compelled to the conclusion found by the court below. The conduct of the parties all through the trial and the experimentation carried on by both parties for a very considerable period in an endeavor to make the machinery work in an effective manner is explicable on no reasonable theory except that the sale of the machinery was still tentative and to become complete only upon demonstration of its suitableness to the intended purpose. There is also evidence that at or before the time when the machinery was put in the building plaintiff said that if it did not do the work defendants did not have to keep it. The fact that the machinery was placed in the building on a foundation laid for that purpose is not inconsistent with this view, for there was no other apparent way of making the test.

*3. SALES: delivery and acceptance: intention.*

III. On the trial below the plaintiff made the claim that the failure of the machinery to do good work was due to the unskilful or improper use thereof by the defendants. Of this we think there was no sufficient proof. It is true that some of the plaintiff's witnesses expressed the opinion that defendants "overloaded" the engine, causing the machinery to "choke down." The testimony of disinterested witnesses is to the effect that when complaint was made and the plaintiff itself or its agents undertook the operation the same result—a choking down, or dying down, or stopping of the motion— would follow. Again it is said that the failure was chargeable to the use of too small wire in some of the connections. At least some of the wire was supplied by plaintiff itself. The

rest seems to have been the wiring which was already in the building and had been found sufficient for the purpose when the power had been supplied from the outside.    Indeed, the objection as to the wiring has the appearance of an afterthought; for it is quite incredible that both these parties would have carried on the effort to make the machinery work over a long period of several weeks, changing the engines, changing pulleys on the dynamo, and exhausting their ingenuity to remedy the conditions complained of, when the simple expedient of supplying a few feet of suitable wire would have put an end to their troubles.

The case presents little but fact questions for our attention and while, as we have before said, much of the testimony is in more or less dispute it still fairly supports the decree below and it is therefore—*Affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.