### No. 8790.

### THOMSON ET AL. *v.* COLORADO PORTLAND CEMENT CO.

SALE—*Implied Warranty—Contract Construed.* Defendant agreed to sell to plaintiff a quantity of cement of two kinds, to be used in the construction of an irrigation dam. One of these was designated as Portland cement and the other as Alkali Proof. The contract of sale guaranteed that the Portland cement should meet certain standard specifications, but provided that the seller "will not be responsible for the improper use of cement." The amount of cement to be furnished was specified. *Held,* that notwithstanding the provision quoted, there was an implied warranty on the part of the seller that the cement should be fit for the purpose for which it was purchased.

That whether the dam was to be entirely of cement or only the core, was immaterial.

That it was only against the improper use of cement that the seller refused to guarantee.

The rule that an express warranty precludes an implied warranty has no application where the express warranty is of one article and an implied warranty is asserted as to another.

*Error to Denver District Court, Hon. Geo. W. Allen, Judge. En banc.*

Mr. BARNWELL S. STUART and EDMUND J. CHURCHILL, for plaintiffs in error.

Messrs. BENEDICT & PHELPS, for defendant in error.

Opinion by Mr. Justice Teller.

THE plaintiffs in error entered into a contract for the purchase of a quantity of cement designated in the contract as "Ideal or Alkali Proof Portland Cement."

The contract was on a printed form, the words "or Alkali Proof" being written in ink. The contract recited that the cement was to be used in the construction of an irrigation dam. Paragraph 12 of the contract is as follows:

"No. 12. That the Ideal Portland Cement shipped hereunder is guaranteed to meet all requirements of the United States Government and the standard specifications of the American Society for Testing Materials. That the seller will not be responsible for the improper use of cement, therefore, will not guarantee finished work."

Six hundred and twenty barrels of Alkali Proof Cement were furnished under the contract and full payment made therefor.

The plaintiffs in error brought suit against the defendant in error to recover damages alleged to have been suffered by reason of the poor quality of the cement. On a motion to strike parts of the amended complaint, the court held that the fact that only the Ideal cement was expressly warranted in said paragraph 12 did not show an intention to exempt the transaction from an implied warranty that the Alkali Proof cement was fit for the use for which it was purchased, to the knowledge of the seller.

Thereafter the defendant filed a general and special demurrer to said complaint, which, having been overruled, the defendant filed an answer.

When the cause came on for trial, defendant objected to the receipt of any evidence on the ground that the amended complaint did not state a cause of action. The court, by a different judge from the one who had made the former rulings, as above stated, sustained the objection, holding that the contract expressly negatives the inference that there was an implied warranty of the cement furnished. It was further held that the purpose for which the cement was to be used was not sufficiently specified in the contract to justify an implication of warranty. There-

upon the plaintiffs asked leave to amend their complaint by adding various allegations, including one to the effect that the dam mentioned in the contract was to have a core of concrete, which the defendant, when making the contract, knew was to be made of the cement to be furnished by it.

This application was denied, the court in making this ruling announcing that the refusal of the seller to guarantee the finished work was a refusal to warrant the cement.

The contract provides for the sale of 3,000 barrels of cement "to be shipped and used in the work herein described," and further "that this contract is intended to cover, and does cover, the entire quantity of Portland Cement which the buyer shall be required to, and in fact, furnish, during the time specified herein on the following described work, to-wit: Throttle dam and appurtenances. Actual work on, together with shipment of cement for, the foregoing described work to commence within thirty (30) days from date hereof."

"That the amount of Portland cement required for the foregoing described work is estimated by buyer and his customer at 3,000 barrels; but nothing herein contained shall obligate the seller to furnish more than the quantity of cement actually furnished by buyer, and used for said work, nor in any event more than 3,000 barrel (being amount of Portland cement required in said described work, per estimate, plus 10 per cent)," etc.

From this it appears that the parties made an estimate of the quantity of cement needed for the work, and whether it was to be used in making a dam entirely of concrete, or only the core of a dam is wholly immaterial. In either case the cement must have been intended to be fit for making concrete.

There is nothing to suggest that it was intended for other than the ordinary use, which is for the making of concrete.

We cannot, therefore, agree with the court that the purpose of the purchase was not known to the seller.

Nor can we accept the court's construction of paragraph 12 of the contract.

The court expressed the opinion that the contract excludes every opportunity of the application of the rule of an implied warranty," and apparently based it on the refusal to guarantee finished work.

This, however, is in conflict with the first portion of that paragraph which does guarantee one of the two kinds of cement mentioned. At the time of the making of the contract, it was not known, we must suppose, which kind of cement would be used, and, if the refusal to guarantee the finished work is a refusal to guarantee the cement used in the work, it must apply as well to the one kind as to the other.

The court's construction entirely overlooks the fact that the refusal to guarantee is expressly predicated upon the ground of the possible improper *use* of cement. It was the improper use of the cement of either kind mentioned for which the seller refused to be responsible. With this fact in view, it is impossible to say that the seller was not required to furnish cement fit for the purpose intended. If the cement furnished failed to meet proper tests of its quality, made before it was put into the dam, the implied warranty was broken, and the buyer need not wait, before rejecting it, till it had proved bad in the finished work. It was clearly the intent of the seller to avoid responsibility for finished work which was bad because made so by the improper use of good cement.

When contracting concerning two kinds of cement, either one of which might be used, and possibly some of both, no reason is suggested why the buyer should relieve the seller of the ordinary warranty of quality which the law implies; and, unless the language used clearly requires that construction, it ought not to be so construed.

We find nothing in the instrument which indicates that the parties made such a contract as the trial court supposed.

The rule that an express warranty precludes an implied

warranty has no application when the express warranty is of one article, and the implied warranty is on another.

The complaint alleged not merely that the concrete was bad because of defective cement, but that the cement was of insufficient tensile strength; that it was defective, inferior and worthless for the purpose for which it was sold to the plaintiffs.

A cause of action was stated, and the court erred in sustaining the objection to any evidence. The amendment offered was unnecessary because the complaint was good as it stood.

The judgment is accordingly reversed.

*Judgment reversed.*

Chief Justice White dissents.

Mr. Justice Allen not participating.