W. J. DYER & BRO., a Corporation, Appellant, v. ARTHUR BAUER, Respondent.

(184 N. W. 809.)

**Sales — in an action on note for price, evidence held to sustain verdict for defendant for breach of warranty.**

> The plaintiffs sue to recover the balance due on a $3,000 promissory note, given for a secondhand fotoplayer. The defense is a warranty of quality and fitness, express and implied, and a breach of the same. The jury found a verdict for defendant for $1.00. *Held*, that the plaintiffs have had a fair trial and that the verdict is well sustained by the evidence.

Opinion filed Oct. 11, 1921.

Appeal from a judgment of the District Court of Burleigh County; *Coffey, J.*

Affirmed.

*F. E. McCurdy,* for appellant.

Laws of 1917 chap. 202, § 15 is a re-enactment of subsection 1 of § 15 of the uniform sales act, and was not intended to apply to an executed sale of a definite, ascertained and existing article but only to executory sale. This is also the common law. Mechem on Sales, § 1346.

This same section does not apply to a second hand article. Mechem on Sales, § 1348.

*Newton, Dullam & Young,* for respondent.

Questions similar to the one involved in this case have been considered in the following cases: Little v. G. E. Van Slych, (Mich.) 73 N. W. 554; Buckbinder Bros. v. Valker, (N.D.) 173 N. W. 947; Ward v. Valker, 176 N. W. 129.

ROBINSON, J.   In November, 1918, the plaintiffs, dealers in musical instruments in St. Paul, sold defendant a secondhand fotoplayer, to be used as an orchestra in his moving picture theatre at Bismarck. For the player defendant gave a note for $3,000. To secure the note he gave a chattel

mortgage on the player. The purpose of this action is to recover the balance due on the note and to foreclose the mortgage. The defense is a breach of warranty. The jury found in favor of defendant and against the plaintiffs and assessed defendant's damages at $1.00.

The evidence was conflicting. The jury heard it all and found, in effect, that defendant had paid for the old player all it was worth, and more too. The payments and freight amounted to about two-thirds of the purchase price. The answer avers that at the time of contracting to purchase the player defendant was the proprietor and manager of a picture theatre at Bismarck, as the plaintiffs well knew; that to induce defendant to purchase the instrument plaintiffs represented and warranted that it would play several musical instruments and furnish good orchestral music for the theatre; that it was in all respects suitable for use in the theatre and that its use would make the theatre a success. The defendant knew nothing of such instruments and he bought the same relying on the representations and warranty; that the player was not suitable for theatrical purposes; it easily got out of order, did not give satisfaction and was not worth over $500. Now it appears that defendant had never seen a fotoplayer and knew nothing of such an instrument and that he relied on the warranty of quality and fitness, express and implied. He bought the player for a particular purpose, known to the plaintiffs, and he bought it relying on their representations and judgment. The deal is covered by the Sales Act (Laws 1917, c. 202, § 15):

"* * * Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for that purpose."

The testimony showing the defects and the failure of the player is oral, and is quite extensive. The player represents a variety of musical instruments. It is a complicated machine. The testimony is that after it was installed by the expert it ran well enough for a while, and in about two or three weeks it started to get out of order. The expert from St. Paul was called. He overhauled it and for a time it ran along, and then got out of order, so the expert had to be called again and again to overhaul the player, and it kept going from bad to worse. The result was a continual discord. "It was awful," says Mr. Bauer. "We could not use the instrument, and we played the piano by hand without the at-

tachments." The machine was installed in January, 1919, and in about a year and a half defendant ceased attempting to use it. Mr. Bauer testifies that during the first year it was used about four or five months, and the rest of the time was out of order. He says the machine is of no value only the piano part, which is worth about $500. The testimony of Mr. Bauer is well corroborated by his wife and by Mr. Hoffman, a piano tuner who worked on the player trying to put it in order.

Mr. Roth, the expert who installed the player, and who overhauled it four times, testifies that on each occasion he left it in good working order and mechanically perfect. He attributes the failure of the player to defects in its operation, and doubtless there were defects in the operation as well as in the complicated machine. Defendant and his help were fairly able to operate the machine till it got badly out of order, and then he had to send for the expert to overhaul it. So it is with a farmer of ordinary skill; when he buys a new machine it commonly runs well and he finds it easy to operate, but as it commences to get badly out of repair the operation becomes more and more difficult. The machine in question was second-hand. It is probable that because of some failure in operation the plaintiffs had taken it back from the first purchaser. But, to indu the defendant to buy it, they assured him that they were going to build in their own shops important missing parts of the player, and promised him the same guaranty as with an entirely new instrument. The player was sold with both an express and an implied warranty of fitness for use in a theatre.

Here is a copy of two letters written to induce the defendant to purchase the player:

St. Paul, Nov. 6, 1918.

Mr. A. J. Bauer, care Orpheum Theatre, Bismarck, No. Dak.—Dear Sir: We are very much surprised to learn through our Mr. Hough that you have entirely given up the idea of purchasing a fotoplayer because of your desire to dispose of your theatre.

We honestly believe, Mr. Bauer, if you were to install one of the genuine fotoplayers in the Orpheum Theatre, it would prove a sensation that would be the talk of the country for miles around and would, undoubtedly, result in increasing your business and your profits. We trust that you will reconsider this matter and let us get together on a proposition. We have known of cases where business was so poor that the owner of

the theatre could not meet his current bills. After the installation of a fotoplayer business improved to such an extent that the increased patronage took care of the payments on the fotoplayer and left a nice profit besides. We are sure that if you put the thing over right, you will have the same results. Cannot we get together at this time?

We are inclosing a stamped and addressed envelope, and awaiting your favor, we are

Yours very truly,

ALB*HR　　　　　　　　　　　　　　　　W. J. Dyer & Bro.

St. Paul, Dec. 17, 1918.

Mr. A. J. Bauer, care Orpheum Theatre, Bismarck, N. D.—Dear Sir: We are sorry to report to you that we are still unable to make shipment of your fotoplayer. Upon receipt of the new parts from the factory, we discovered that one of the most important parts was missing and as it would take at least two weeks to get this by express from the factory, we concluded to go ahead and build it in our own shops. This has delayed matters longer than we had anticipated, but we have promised you the same guaranty with this instrument as we would with an entirely new one, and for this reason, the writer has insisted that the foreman of our repair department should have this instrument in just as good condition mechanically as a new one before it is boxed for shipment.

Of course, this means that the instrument will not be set up until after Christmas and while it may be a disappointment to you not to have the instrument sooner, you really are way ahead of the game for it means a saving of several hundred dollars to you on the instrument.

Regretting exceedingly that we have not been able to make shipment up to this writing, and with compliments of the season, we are

Yours truly, -

ALB:AS　　　　　　　　　　　　　　　　W. J. Dyer & Bro.

P. S.—Inclosed please find copy of your order which has been accepted by us.

1:INC.

On the whole it appears that the plaintiffs have had a fair trial. They have received good value for their player. The verdict does them no injustice. It is well sustained by the weight of the testimony.

Judgment affirmed.

BIRDZELL, J., concurs.

GRACE, J., concurs in the result.

CHRISTIANSON, J. (concurring). All the errors assigned and argued on this appeal relate to the defense interposed by the defendant. It is contended:

(1) That there is no evidence justifying the application of subdivision 1, § 15, c. 202, Laws 1917, which provides:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for that purpose."

(2) That the evidence in this case does not show a breach of such warranty (if one exists) for the reason that it does not appear that the musical instrument was not reasonably fit for the purpose for which it was purchased, but on the contrary that the evidence shows that it was fit for such purpose.

(3) That the contract of sale was for a specified article, under its patent or trade name, and, hence, that (under subd. 4, § 15, c. 202, Laws 1917) there was no implied warranty as to its fitness for any particular purpose.

(4) That there is no evidence from which the jury could compute the amount of damages to which the defendant is entitled, in event a warranty and breach thereof were shown.

1 and 2. So far as the first two contentions are concerned. I am of the opinion that the evidence, considered as a whole, justified the submission to the jury both as to whether an implied warranty existed, and also whether there was a breach of such warranty. In other words, the evidence was such that it could not be said, as a matter of law, either that there was or was not an implied warranty; neither could it be said, as a matter of law, that the warranty (if one existed) had not been broken. Inasmuch as the findings of the jury upon these two questions have substantial support in the evidence, they are, of course, not subject to interference by this court.

3. The contention that the contract involved in this case was for the sale of a specified article, under its patent or trade name, has in my opinion no real basis in the evidence. The evidence shows that the defendant was solicited by the plaintiff to purchase an instrument of the character involved in this controversy. When the defendant called upon

the plaintiffs with respect to the matter, he was not at all interested in the purchase of an instrument of any particular make. He did not come to the plaintiff saying that he desired to purchase a fotoplayer manufactured by some particular firm. What he wanted and finally agreed to buy was an instrument which could be utilized for a particular purpose; and he relied upon plaintiff's representations and superior skill or judgment as to what that instrument should be. In any event, the record discloses that the contention that the contract of sale was for a specified article under its patent or trade name was not advanced in the trial court, and it cannot be urged for the first time on appeal.

4. I am also of the opinion that the contention that the evidence furnished no proper basis for a computation of damages may not be raised at this time. It is true that the questions propounded to the witnesses as to the value of the instrument were couched in the present tense; that is, the witnesses were not asked as to the value of the instrument at the time of the purchase, but were asked as to the then value. The defendant testified that the instrument could be used as a piano, but that the attachments were of no value, and that, used as a piano, it was worth $500. Another witness for the defendant testified that the instrument in its then condition was valueless. These witnesses were both present at the time of the installation of the instrument, and had more or less to do with its operation and repair during the entire period it was in the hands of the defendant. Their testimony was not objected to on the ground now urged. The only objection urged to the testimony of either witness in the trial court was that the witness had not been shown to be qualified to testify as to value. No objection was made on the ground that the evidence related to the value of the instrument at the time of the trial, and that it should relate to the value of the instrument at the time of the purchase. The objection now made could readily have been obviated, if it had been presented at the time of the trial, and manifestly the plaintiff cannot at this time object to the evidence on grounds different from those raised in the trial court. It would also seem that no particular harm could result from the questions as propounded. Whether a particular article is fit for a specified purpose can generally be determined only after trial or an attempt to apply it to the intended use. While the questions propounded to the witnesses as to the value of the instrument in controversy were in the present tense, and the answers related to the then value of the instrument, it would seem that this testimony, if true, also

tended to prove that the instrument, at the time of its installation, was fit only for the same purpose which the testimony showed it to be fit for at the time of the trial.

Upon the record as a whole, I find no reason for disturbing the verdict or the judgment entered thereon. Hence I agree that the judgment appealed from should be affirmed.

BRONSON, J., concurs.