**DAVENPORT LADDER CO. v. EDWARD HINES LUMBER CO.**

No. 8845.

Circuit Court of Appeals, Eighth Circuit.

Aug. 18, 1930.

Wayne G. Cook, of Davenport, Iowa (C. D. Waterman, of Davenport, Iowa, on the brief), for appellant.

H. B. Betty, of Davenport, Iowa (Wm. S. Bennet, of Chicago, Ill., Walter M. Balluff, Betty & Betty, and Cook & Balluff, all of Davenport, Iowa, on the brief), for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

In this case appellee, as plaintiff, brought action against the appellant to recover a balance claimed to be due for lumber sold. The

parties will be designated as they appeared in the lower court. The plaintiff alleged that on the 14th day of May, 1927, the defendant entered into a written contract for the purchase of lumber. A copy of the instrument claimed to be the contract was attached to the petition as an exhibit and made a part thereof, and it was alleged that, pursuant to the written order or contract, the plaintiff shipped and delivered certain of the lumber therein described, and that the total purchase price remained due and unpaid. The defendant specifically denied that the written order contained the complete contract between the plaintiff and defendant, that the lumber shipped by the plaintiff to the defendant was not the lumber specified nor agreed to be furnished, and that, after defendant discovered this fact, it refused to accept further lumber, offered to return that already received, and canceled the balance of the alleged order. It is then pleaded that the plaintiff made certain oral representations that the lumber to be shipped defendant would be suitable for the purpose of manufacturing tool chests to fulfill a specific contract entered into by the defendant with the Moline Pressed Steel Company of Moline, Ill., that the defendant had knowledge of the specific purpose for which the material was required, but that the lumber furnished was not fit for such purpose, because it was filled with moisture from which shrinkage resulted, rendering it impossible for defendant to make tool chests therefrom so as to conform with the requirements of the order of the Moline Pressed Steel Company. By way of counterclaim, the defendant alleged a breach of warranty, in that the plaintiff, knowing the specific purpose for which the lumber was required, furnished lumber unfit for that purpose, the defendant having relied on plaintiff's skill and judgment to furnish lumber reasonably fit for the purpose for which the defendant required the same, and affirmative judgment on this counterclaim was demanded in the answer. The affirmative allegations in the answer were put in issue by reply on behalf of the plaintiff. On trial of the action, the plaintiff introduced an order made out on one of its printed forms which contains, in addition to a description of the materials, the following provisions:

"The above order is taken subject to the acceptance or rejection by seller's Home Office within five (5) days from date of receipt hereof, to be forthwith confirmed to the buyer. Said order is accepted subject to the terms, conditions and provisions printed on the back of this order."

Certain printed provisions appeared on the back of the written order, among them the following: .

"Only orders and contracts signed by the buyer and accepted by the Home Office of the seller are binding."

The order was made out in duplicate, signed by plaintiff's salesman, and a copy furnished to defendant; it was never signed by the defendant, although it was accepted by the plaintiff and certain of the materials therein described were shipped to the defendant.

It appeared from the evidence that the defendant was engaged primarily in the manufacture of ladders; that it also manufactured certain ironing boards and certain rough packing boxes; that it had never manufactured tool chests or similar boxes, and in its usual business did not have occasion to distinguish between kiln-dried and air-dried lumber, although its president and manager had a general notion of the kiln-drying process and its purpose, but had had no personal experience with the process. The defendant had purchased lumber of the plaintiff for a period of twenty-five years, and had been satisfied with its dealings. Plaintiff's salesman had been calling on defendant for several years prior to the transaction in question. In April, 1927, plaintiff's salesman, one Oatman, called on defendant's president and manager, one Hayward, advising him that the Moline Pressed Steel Company was in the market for tool chests to be used in connection with their line of children's tools; that another concern had consulted Oatman with reference to the lumber requirements and was figuring on this proposition; that the other company was not, in his judgment, equipped to get out the chests, and Oatman suggested that Hayward negotiate for this business. Oatman was already familiar with what the Moline Pressed Steel Company wanted, and kept in close touch with the situation, personally assisting the defendant in working out the details and in preparing sample tool chests for exhibit to the Moline Pressed Steel Company, which sample chests were made up of kiln-dried lumber. He personally participated in these preparations and negotiations, went over the specifications in the first proposal submitted, saw also the final proposal submitted before the order for lumber was made out, which was May 14, 1927. Both Oatman and plaintiff's vice president knew that the chests desired by the Moline Pressed Steel Company were high quality chests. The order for lumber was made out at a conference between Oatman and Hayward on

May 14th, 1927. The list of materials was prepared by Oatman, and their suitability was discussed at and prior to that time. In this connection the following appears in the testimony of Hayward:

"Near the close of our session I made the remark to Mr. Oatman that I supposed this was kiln dried lumber that they proposed to furnish. Mr. Oatman said 'No.' 'Well,' I said, 'Why not?' 'Well,' he said, 'This lumber is dry,' and he made the remark, he said 'You don't care if this lumber is dry whether it is kiln dried or air dried.' I said, 'No, I don't care whether it is kiln dried or air dried just so the lumber I get is suitable to go into these chests that we are making.' Mr. Oatman's reply was that we need not worry about the quality of the lumber."

Hayward also testified that he told Oatman that he was going to take his lumber and accept his prices, "and expected them to furnish the lumber; that we are furnishing plant and equipment." Hayward, on behalf of the defendant, with reference to a conference which he had with the vice president of the plaintiff, testified:

"I told Mr. Burgess one of the reasons why he should grant this request (with reference to the acceptance of trade acceptances from the Moline Pressed Steel Company), that Mr. Oatman had brought this proposition to us, and that we were not going anywhere else for the lumber; that we considered that this was their order; that it was their business and that in view of these facts we felt that they were furnishing the lumber and we were furnishing the rest—the equipment and labor; that they could go further than they ordinarily would in order to also bear a share of the credit risk."

There was also in evidence a letter from Mr. Oatman to Hayward, written while these negotiations were pending, in which he says, among other things, as follows:

"I am in receipt of your very nice letter of April 28th and trust prior to receipt of this letter that you will wire me to proceed along the lines we have mentioned, with the lumber for the Moline Pressed Steel Company tool boxes. * * *

"I realize that this matter is in good hands, and I have every faith in your closing with him Monday, *and you may depend on it that we will satisfy you in every way on the lumber.* (Italics ours.)

"Thanks for all the interest you have shown in this matter, as it has taken much of your time and effort, and I think we both are entitled to a satisfactory decision from Mr. Lundahl. If necessary I will come down again to see you, otherwise I will enter the business when you wire me along the lines discussed, sending you copy of my order."

It was in effect conceded that the lumber furnished was not suitable for the purpose intended. When the order was signed by the salesman and a duplicate copy delivered to the defendant, the terms and conditions of payment had not been agreed upon and were not included in the order, nor did it contain, at that time, any schedule as to the time of deliveries, and the defendant's testimony was to the effect that these provisions never, with his knowledge, became a part of the order. There was other testimony as to details, not important to the issues as presented. In this condition of the testimony, the plaintiff moved for a directed verdict on the ground (1) that the contract between the plaintiff and defendant was complete and in writing; (2) that it contained no express warranty that the lumber furnished was suitable for the purpose claimed by the defendant; (3) that the plaintiff had delivered the kind and character of lumber designated in the written contract, up to the point of cancellation; (4) that the evidence showed that the defendant selected a recognized and established grade of lumber well known to the trade, being a specified article described in the written contract, and that the plaintiff furnished a known, described, and definite article as specified in the contract, and hence there was no implied warranty of fitness, even though the buyer disclosed the purpose for which the article was purchased. This motion was granted, and verdict and judgment were entered accordingly.

The Uniform Sales Act was in force both in the state of Iowa and the state of Illinois at and prior to the time of the transaction involved in this case. The pertinent provisions of that act, covering implied warranties, are as follows:

"Sec. 15. Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. * * *

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name there is no implied warranty as to its fitness for any particular purpose.

"(5) An implied warranty or condition as to the quality or fitness for a particular purpose may be annexed by the usage of trade.

"(6) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith." Acts 38th Gen. Assem. Iowa, c. 396, § 15.

As a verdict was directed for plaintiff, we must accept as true the evidence offered by defendant in support of its defense. The lower court was of the view that the order for material constituted a complete written contract between the parties, and hence the oral testimony admitted during the trial with reference to the negotiations between the parties prior to the acceptance of the order by the plaintiff company and the testimony as to the attending facts and circumstances was not admissible, for the reason that such testimony tended to vary or contradict the terms of the written contract of the parties. It is to be noted (1) that the instrument did not bear the signature of the defendant, and by its terms it was not to become binding until and unless so signed; (2) accepting defendant's testimony as true, it did not contain any provision as to the terms of payment, nor any provision as to time for delivery of the material; (3) it was silent as to the condition of the lumber as to dryness; and (4) it was apparent that, so far as the molding was concerned, further explanation was required, as it could not be prepared from the rough sketch. In fact, it is the contention of the appellee that it became binding only after the plaintiff had written the defendant the letter with reference to the terms of payment, so that, according to appellee's contention, at least, the letter would also constitute a part of the contract. This instrument, as has before been noted, was one of plaintiff's printed forms, on which had been entered by plaintiff's salesman a list of the materials thought to be necessary from which to manufacture the chests. It was in the nature of a memorandum evidentiary in character, but not a formal and completed contract containing all the terms of the agreement between the parties. It is particularly significant that it was not signed by the defendant, the party sought to be charged. We are of the view that the contract of the parties is not to be limited to the written and printed words contained in this unsigned order. Hendrix v. Letourneau, 139 Iowa, 451, 116 N. W. 729; St. Louis Refrigerator Co. v. Vinton Washing Machine Co., 79 Iowa, 239, 44 N. W. 370, 18 Am. St. Rep. 366; Thurston v. Lubrite Refining Co., 120 Kan. 137, 242 P. 126; Hamilton Brown Shoe Co. v. Stanley, 126 S. C. 501, 120 S. E. 234; Hitz v. Warner, 47 Ind. App. 612, 93 N. E. 1005; Dominion Trading Co. v. Kronman & Co. (Sup.) 168 N. Y. S. 693; Alderman Bros. Co. v. Westinghouse Co., 92 Conn. 419, 103 A. 267; Knapp & Spencer Co. v. Daniels, 52 S. D. 612, 219 N. W. 479.

So far as the negotiations had between the plaintiff and the defendant prior to the time of the preparation of this order are concerned, they were carried on exclusively by Hayward on behalf of the defendant and by Oatman on behalf of the plaintiff. The record discloses only Hayward's version of these negotiations, and in the present condition of the record this version must be accepted as true. It appears without contradiction that Oatman was entirely familiar with the specific purpose for which this material was desired, and he assured the defendant during these negotiations that the lumber would be dry, and that the defendant might "depend on it that we will satisfy you in every way on the lumber." This testimony did not contradict anything in the written order. In the view we take of the issues, the question as to whether or not this order constituted a written contract binding on the parties is not in itself decisive of the case. The instrument contains no express warranty and no statement to the effect that no warranty shall be implied. In other words, it does not negative the thought of an implied warranty. In Hercules Powder Co. v. Rich (C. C. A.) 3 F.(2d) 12, 18, which involved a contract containing an express warranty, in an opinion by Judge Kenyon, it is said:

"Defendant suggests that an implied warranty cannot be read into this case, as plaintiff has expressed in words the warranty he relies on. * * * Many courts of ability and learning have held that an implied warranty may be available as basis of an action that the article is not suited for purposes for which it was purchased, even when there is an express warranty, unless the implied warranty is excluded by the terms of the express warranty. For instance, that express warranty of title will not exclude implied warranty of quality. * * * If the jury found there was no express warranty, we see

no reason why they might not find under the evidence showing the circumstances of the sale that there was an implied warranty that the fuse was fit for the purpose intended, viz., of such burning speed as would, in the use to which the agent knew it was to be put, not have been dangerous to plaintiff's safety if properly used, and without negligence on his part. If the plaintiff's testimony was true that the fuse burned instantaneously, there was a breach of implied warranty."

See, also, O. C. Barber M. & F. Co. v. Brown Hoisting Machinery Co. (C. C. A.) 258 F. 1; Hansmann v. Pollard, 113 Minn. 429, 129 N. W. 848; New Birdsall Co. v. Keys, 99 Mo. App. 458, 74 S. W. 12; J. L. Owens Co. v. Leland Farmers' Elev. Co., 192 Iowa, 771, 185 N. W. 590; Blackmore v. Fairbanks, 79 Iowa, 282, 44 N. W. 548; Bucy v. Pitts Agri. Works, 89 Iowa, 464, 56 N. W. 541; Western Elec. Co. v. Baerthel, 127 Iowa, 467, 103 N. W. 475; American Player Piano Co. v. American Pneumatic Action Co., 172 Iowa, 139, 154 N. W. 389; B. F. Sturtevant Co. v. Le Mars Gas Co., 188 Iowa, 584, 176 N. W. 338; Thomson v. Colorado Portland Cement Co., 64 Colo. 156, 170 P. 949; Olson v. Sullivan, 109 Okl. 297, 234 P. 634.

The Uniform Sales Act has not materially modified the common-law rule as to implied warranty of fitness. Kansas City Bolt & Nut Co. v. Rodd (C. C. A.) 220 F. 750. The rule under the common law is thus stated by Mr. Story:

"The maxim of 'caveat emptor,' seems gradually to be restricted in its operation and limited in its domain, and beset with the circumvallations of the modern doctrine of implied warranty, until it can no longer claim the empire over the law of sales, and is but a shadow of itself." Story, Sales (4th Ed.) § 359.

The raising of an implied warranty of fitness depends upon whether the buyer informed the seller of the circumstances and conditions which necessitated his purchase of a certain character of article or material, and left it to the seller to select the particular kind and quality of article suitable for the buyer's use. This is the rule regardless of whether the case is governed by the common law or the Uniform Sales Act, except that under the Uniform Sales Act a dealer is placed under the same responsibility as a manufacturer and the term "trade-mark" or "trade-name" is used, rather than the term "specified, described article." So, where the buyer orders goods to be supplied and trusts to the judgment or skill of the seller to select goods or materials which shall be suitable for the purpose for which they are ordered, there is an implied warranty that they shall be reasonably fit for that purpose. Hercules Powder Co. v. Rich (C. C. A.) 3 F.(2d) 12; Kansas City Bolt & Nut Co. v. Rodd (C. C. A.) 220 F. 750; Bird & Son v. Guarantee Const. Co. (C. C. A.) 295 F. 451; Barrett Co. v. Panther Rubber Mfg. Co. (C. C. A.) 24 F.(2d) 329; O. C. Barber M. & F. Co. v. Brown Hoisting Co. (C. C. A.) 258 F. 1; Conkling v. Standard Oil Co., 138 Iowa, 596, 116 N. W. 822; B. F. Sturtevant Co. v. Le Mars Gas Co., 188 Iowa, 584, 176 N. W. 338; Petersen v. Dreher, 196 Iowa, 178, 194 N. W. 53; Omaha Coal, Coke & Lime Co. v. Fay, 37 Neb. 68, 55 N. W. 211; Blackmore v. Fairbanks, 79 Iowa, 282, 44 N. W. 548; Geo. E. Pew Co. v. Karley, 168 Iowa, 170, 150 N. W. 12, 13; Universal Motor Co. v. Snow, 149 Va. 690, 140 S. E. 653, 59 A. L. R. 1174; Glover Mach. Works v. Cooke-Jellico Coal Co., 173 Ky. 675, 191 S. W. 516; International Harvester Co. v. Porter, 160 Ky. 509, 169 S. W. 993; Berger Mfg. Co. v. Crites, 178 Mo. App. 218, 165 S. W. 1163; Hunter v. Waterloo Gasoline Engine Co. (Mo. Sup.) 260 S. W. 970; Long v. Five-Hundred Co., 123 Wash. 347, 212 P. 559; Hausken v. Hodson-Feenaughty Co., 109 Wash. 606, 187 P. 319; Marx v. Locomobile Co., 82 Misc. Rep. 468, 144 N. Y. S. 937; Van Pub. Co. v. Westinghouse Co., 72 App. Div. 121, 76 N. Y. S. 340; Sachter v. Gulf Ref. Co. (Sup.) 203 N. Y. S. 769; Ireland v. Louis K. Liggett Co., 243 Mass. 243, 137 N. E. 371; W. J. Dyer & Bro. v. Bauer, 48 N. D. 396, 184 N. W. 809.

As stated by Judge Sanborn in Davis Calyx Drill Co. v. Mallory (C. C. A.) 137 F. 332, 334, 69 L. R. A. 973:

"An implied warranty that an article will be fit for a particular purpose may be inferred from a contract to make or supply it to accomplish that purpose, because the accomplishment of the purpose is the essence of the undertaking."

The purpose for which the buyer requires the article and not the specific article itself is the essential matter. In George E. Pew Co. v. Karley, supra, the Supreme Court of Iowa, addressing itself to this question, said:

"But if he [the buyer] goes to the manufacturer or dealer describing the kind of work to be done or the result he desires to accomplish, and such manufacturer or dealer professes to be able to supply an engine or machinery which will do it, and the buyer is

thereby induced to give him an order therefor, then there is a warranty that the machine or thing so furnished is reasonably adapted to the work for which it is procured, even though the order particularly defines and describes it."

In the instant case, it has already been noted that the seller was thoroughly familiar with the purpose for which the buyer required the lumber. Not only this, but the evidence tended at least to prove that the buyer relied upon the skill and judgment of the seller in selecting and furnishing the lumber. Hayward asked Oatman why the lumber to be furnished was not to be kiln-dried, to which he replied: "Well, this lumber is dry. You don't care, if this lumber is dry, whether it is kiln dried or air dried." To this the buyer replied: "No, I don't care whether it is kiln dried or air dried, just so the lumber I get is suitable to go into these chests that we are making." To this Oatman replied that the buyer need not worry about the quality of the lumber. This is further corroborated by the letter from Oatman to Hayward, assuring Hayward that "you may depend on it that we will satisfy you in every way on the lumber." From this testimony the jury might properly have found (1) that the lumber was purchased for a specific purpose which was known to the seller; and (2) that the buyer relied upon the judgment and skill of the seller in selecting and furnishing lumber reasonably suitable for this known purpose, and hence it was improper to take the case from the jury on this issue, unless, as contended by the plaintiff, the case is removed from the doctrine of implied warranty on the theory that the article purchased was a known, described, and defined article.

First, it may be observed that the Uniform Sales Act does not preserve, in words at least, the exception from the rule of implied warranty "a known, described and defined article." Subdivision 4 of section 15 of the Uniform Sales Act provides that:

"In the case of a contract to sell or a sale of a specified article under its patent or other trade name there is no implied warranty as to its fitness for any particular purpose."

The lumber was described in the order as "C and Better Norway," and also as "Clear and Select W. P." Nothing is said in the order with reference to the condition of the material as to dryness, and it appears that this lumber of the grade and description given might carry various degrees of moisture. It is true that, where the buyer orders a specific article or material for a specific purpose, even though that purpose be known to the seller, no warranty of fitness will ordinarily be implied, but, where an article is desired for a particular purpose and that purpose is known to the seller, and the buyer relies upon the seller to furnish him a suitable article, then a warranty of fitness will be implied, even though the article may have a well known and defined name or designation, or even though it be sold under a trade-name. Geo. E. Pew Co. v. Karley, 168 Iowa, 70, 150 N. W. 12; B. F. Sturtevant Co. v. Le Mars Gas Co., 188 Iowa, 584, 176 N. W. 338; Sachter v. Gulf Ref. Co. (Sup.) 203 N. Y. S. 769; Ireland v. Louis K. Liggett Co., 243 Mass. 243, 137 N. E. 371; Long v. Five-Hundred Co., 123 Wash. 347, 212 P. 559; W. J. Dyer & Bro. v. Bauer, 48 N. D. 396, 184 N. W. 809. Here, the evidence warranted the jury in believing that the buyer was assured by the seller of the fitness of this material for a particular purpose, and undertook to furnish him the material required for that purpose. It was immaterial to the buyer whether this lumber be called "Norway Pine" or by any other name; what he was attempting to buy was lumber fitted for his particular purpose.

In this state of the record it could not properly be said as a matter of law that the buyer had, on his own initiative and his own responsibility, ordered a specified, described, and defined article, and that he had been furnished what he ordered. This was, at least, a question of fact which should have been submitted to the jury.

It follows that the court erred in directing a verdict for the plaintiff, and the judgment of the lower court is therefore reversed and the cause remanded, with directions to grant a new trial.

BOOTH, Circuit Judge, concurs in the result.