AUGUSTINE, Judge.
On January 19, 1972, Herman Wilson Jones, a seaman aboard the shrimp trawler F/V LADY OF GOOD VOYAGE, was sitting on the deck of that vessel repairing a fishing net when one of the boat’s steel booms collapsed, falling across Jones’ back and causing severe injury. It is alleged that the vessel was operating under normal conditions and “without any unusual circumstances”.
Following the accident, Jones filed suit in Federal District Court against his employer, Paul V. Menard, who owned and operated the LADY OF GOOD VOYAGE. Jones sought recovery under the Jones Act and under general maritime law.
*450 Paul Menard, in turn, filed a third-party claim for contribution and indemnity against the designer and builder of the vessel, St. Charles Steel Fabricators, Inc., St. Charles Corporation, the firm which had supplied the steel pipe from which the boom was later constructed.
On December 1,1978 after many years of pre-trial maneuvers from all sides, plaintiff and his employer Menard agreed to a settlement of their dispute. This settlement did not govern any of the plaintiff’s claims against any other parties, however, and on March 28,1979 Jones instituted this present action against St. Charles and Glazer in State Court.
The allegations which concern seaman Jones’ cause of action against Glazer, the steel supplier, are these:
IX.
“That the steel pipe used for the construction of the boom which failed and caused the injuries complained of herein, was purchased from GLAZER STEEL CORPORATION.
X.
That the failure of the boom complained of herein was due to a defective condition of the steel pipe provided by GLAZER STEEL CORPORATION and the said GLAZER STEEL CORPORATION should be responsible under its expressed and implied warranties and obligations that the product that was sold was adequate for the use and purpose intended.” These allegations were found by the trial
court to be insufficient to state a cause of action against Glazer. Plaintiff thereafter amended the petition by addition of the following:
XA.
“Plaintiff alleges the following acts of negligence on the part of GLAZER STEEL CORPORATION:
a)Failure to reasonably inspect the product before it was sold;
b) Failure to determine by reasonable inspection obvious defects in the products sold by them;
c) Providing the wrong grade of steel pipe for use intended when it was known to defendant that the pipe would be used for construction of a boom of a vessel;
d) Any and all other acts of negligence which may be shown at the trial of this matter.”
Glazer subsequently filed an exception of no cause of action as to each plaintiff’s allegations, supplementing these exceptions with a motion for summary judgment.
The trial court held in favor of Glazer on the exceptions and on the motion for summary judgment. Plaintiff Jones now seeks reversal of that decision.
As set out above, Jones’ petition seeks recovery under two distinct theories, each of which concerns Glazer’s act of supplying allegedly defective steel pipe to St. Charles, the shipbuilder.
As to the first theory of recovery, Jones alleges that Glazer should be liable to him under the law of products liability, because Glazer supplied an obviously defective steel pipe to St. Charles and the defect ultimately caused his injury. Plaintiff relies upon Peltier v. Seabird Industries, Inc., 243 So.2d 112 (La.App. 3rd Cir.1971) for the proposition that a seller or supplier is duty-bound to refrain from putting into commerce any product which is obviously defective. Peltier held that although a seller is not presumed to know the hidden vices of his product, as is a manufacturer, he is bound to conduct reasonable inspection to discover obvious defects. Any injury directly caused by the seller’s breach of these duties gives rise to delictual liability. We conclude that appellant’s allegation that his injury was caused by an obvious defect in the pipe sold by Glazer adequately states a cause of action under Louisiana law.
Nevertheless, plaintiff cannot prevail in the motion for summary judgment. The depositions submitted by Glazer were sufficient to establish that Mr. Bourgeois *451 conducted an inspection of the steel pipe and found no obvious defects. The counter-affidavit offered by plaintiff Jones altogether failed to address Mr. Bourgeois’ testimony on this point and it appears that the “obvious defect” theory of recovery has been abandoned in favor of the allegations of paragraph X-A(c). In the absence of any response from the plaintiff, we must conclude that there exists no material issue of fact, that is, that the steel was not obviously defective.
As to the plaintiffs claim under the theory of implied warranty, there is no dispute [1] that St. Charles ordered, and Glazer delivered, three pieces of steel described as 120 feet of six-inch schedule forty black pipe.[2] It has been held that “When a seller has delivered to the buyer an article specified in the contract, under a definite description, there is no implied warranty on the seller’s part that the article is fit for the purpose intended, even though he knew of the purpose for which article was bought.” Henderson v. United States Steel and Window Glass Co., 121 So. 576 (La.1929). Emphasis added.
The above rule has been abrogated in those instances where, despite the fact that the sale is by description, the buyer relies upon the seller’s recommendation or selection of the described thing. Davenport Ladder Co. v. Edward Hines Lumber Co., 43 F.2d 63 (8th Cir.1930), and cases collected in 90 A.L.R. 406.
We find no such reliance by St. Charles upon Glazer in this case, however. Noah Bourgeois of St. Charles Steel unequivocally stated in deposition that at no time did Glazer’s representatives recommend which type of steel to use in the manufacture of the shrimp trawler. Since this statement was not contradicted, we must conclude that St. Charles, applying its expertise as a ship builder, made the selection as to which grade of steel should be supplied.
Under the rule of Henderson, supra, we therefore find that Glazer gave no implied warranty to St. Charles or to any third party that the steel which it supplied would be fit for any particular purpose.
Finally, we must reject plaintiff’s contention that this case should fall within the rule of Chappuis v. Sears, Roebuck & Co., 358 So.2d 926 (La.1978): a professional vendor, much like a manufacturer, is presumed to know of latent defects in the products it sells, and will be held strictly liable for the injury such defects cause to purchasers or third persons. Mr. Jones’ petition neither alleges Glazer’s status as a professional vendor nor does it plead facts from which that conclusion might be drawn. Again, on the motion for summary judgment, plaintiff presented no evidence whatsoever as to Glazer’s status as a professional *452 vendor. We therefore hold that Chappuis, supra, cannot govern this case.
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.

. There is no dispute arising from admissible evidence submitted at the motion for summary judgment; and we cannot recognize the affidavit submitted by plaintiff Jones in opposition to Glazer’s motion. That document is the report of Mr. Henry Reinecke, Jr., who concluded that Glazer had furnished “X-52 line pipe”, a higher grade of steel than St. Charles had requested. The report further states that X-52 pipe has the propensity to crack during welding unless special welding rods are used, and that if St. Charles was unaware of the properties of the pipe, they would probably not have used the correct rod.
Although Mr. Reinecke’s report seems to raise a issue of fact, the affidavit is not the product of Mr. Reinecke’s personal knowledge, but rather the sum of the affiant’s deductions, based upon his reading of reports submitted by other experts. Mr. Reinecke himself did not inspect the steel used to construct the boom.
Such evidence is clearly inadmissible. LSA-C.C.P. 967 requires that supporting and opposing affidavits shall be made on personal knowledge, and as stated in Hidalgo v. General Fire and Casualty Co., 254 So.2d 493 (La.App. 3rd Cir.1971):
“In the law of evidence, ‘personal knowledge’ means something which the witness actually saw or heard... The purpose of the requirement of ‘personal knowledge’ in Art. 967 is to limit the affidavits to facts which the affiant saw, heard or perceived with his own senses. The mere opinion of an expert witness, based solely on his special training and experience, is not based on ‘personal knowledge,’ as this is used in Art. 967.”

. “Schedule 40” pipe has a diameter of six inches and a wall thickness of .280 inches. The term therefore refers only to physical dimensions and does not define a grade or quality of steel.