J. D. AND A. B. SPRECKELS SECURITIES COMPANY, APPEL-
LANT V. H. W. ABTS COMPANY, APPELLEE.

FILED MARCH 28, 1922.  No. 22042.

1. **Sales:** DELIVERY. In the absence of a contract to the contrary, delivery to a common carrier of goods purchased is not delivery to the buyer, unless the shipment is consigned to the buyer, his agent, or to his order.

2. ———: ASSUMPTION OF LOSS. The following provision in a contract of sale of goods: "Buyer to assume any and all loss or damage arising while goods are in transit, from sifting, leaking, breaking and chafing. Seller's responsibility ceases upon delivery of goods to carrier"—where the shipment is consigned to the seller or his agent, and there is no contract that such consignment shall constitute delivery to the buyer, construed to limit the loss assumed by the buyer to those expressly mentioned.

APPEAL from the district court for Platte county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*Garlow & Long* and *Gaines, Ziegler, Van Orsdel & Gaines,* for appellant.

*Albert & Wagner, contra.*

Heard before LETTON, DEAN and DAY, JJ., CLEMENTS (E. J.) and WELCH, District Judges.

WELCH, District Judge.

Appellant brought suit in the district court for Platte county to recover from appellee $669.91, which it claimed to be due as a balance on the purchase of a car-load of sugar from appellant by appellee. The sugar was sold by written memorandum executed by Russell Brokerage Company, for appellant, and by the appellee. This memorandum provided for the price of $8.01 a bag of 100 pounds, and freight prepaid to Columbus, Nebraska. It also stated

that such sale was subject to the terms and conditions printed on the reverse side thereof. On the reverse side of the order were the following conditions: "Loss and Damage: Buyer to assume any and all loss or damage arising while goods are in transit, from sifting, leaking, breaking and chafing. Seller's responsibility ceases upon delivery of goods to carrier. Credit: Seller reserves the right to determine limit of credit of purchaser before delivery of each car."

Appellant claims that, in pursuance of this memorandum of contract, it shipped to Russell Brokerage Company at Columbus, Nebraska, for appellee, 800 bags of sugar of 100 pounds each, for which appellee has paid but $5,609.93, leaving due therefor $669.91, after allowing 2 per cent. discount for cash.

The appellee admits that appellant sold and delivered to it a car of sugar at the price above mentioned, and alleges that said sugar was, by oral agreement with appellee, to be delivered to appellee at Columbus, Nebraska. Appellee also claims that the car of sugar delivered to it in pursuance of said sale contained but 715 sacks of sugar.

The testimony of the witnesses on behalf of appellant was to the effect that 800 sacks of sugar, each weighing 100 pounds, were loaded by it into a railroad car at San Francisco, California, the car then sealed with said sacks therein and consigned to Russell Brokerage Company, Columbus, Nebraska, with freight prepaid. This testimony is uncontradicted by any witness. Appellant also introduced evidence tending to show that the car, when turned over to appellee for unloading at Columbus, Nebraska, had its seal unbroken, and that the bags of sugar therein were in the car of a uniform height throughout. The testimony of appellant's witnesses was that the car was loaded at San Francisco with bags 9 tiers high with 40 rows thereof at each end, and in the doorway, 7 tiers 5 sacks high, 5 tiers 3 sacks high, and 6 tiers 5 sacks high. The testimony of the witnesses for appellee was that the car, when turned over to it at Columbus, Nebraska, for unloading, contained but

715 sacks of sugar. No witness denies this testimony. At the conclusion of the evidence each party moved the court to direct a verdict in its favor. The court thereupon discharged the jury and took the case under advisement. Afterwards the court found generally for the appellee, and entered judgment of dismissal and for costs against the appellant. From this judgment and order overruling its motion for a new trial, appellant appealed.

If 800 sacks were loaded into the car at San Francisco and the car then sealed, and the seals remained unbroken until broken by appellee at Columbus, there should have been 800 sacks in the car when turned over to appellee at Columbus. On the other hand, if but 715 sacks of sugar were in the car when turned over to appellee at Columbus, and the seals of the car had remained unbroken from the time of its sealing at San Francisco, there could not have been 800 sacks in the car when sealed. The testimony of appellant's witness that the seals of the car at Columbus were unbroken did not identify the seals then on the car as the identical seals which had been placed on the car at San Francisco. The seals placed on the car at San Francisco were shown to have thereon certain numbers and other identification marks. There was no evidence as to what, if any, identification marks were on the seals which were unbroken at Columbus. The evidence that at Columbus the sacks were of uniform height throughout the car, doorway and all, and the evidence that the car was loaded with the sacks piled higher at each end of the car than in the doorway, shows that there was some change in the position of the sacks in the car before its arrival at Columbus. This change must have been caused, either by movement of the car in switching, in transportation, or by some person in the car.

The finding of the court was a general finding for defendant. This was a finding that there were but 715 sacks of sugar in the car when it was turned over to appellee at Columbus. The appellant contends that the undisputed evidence proves that there were 800 sacks of sugar deliv-

ered to the carrier at San Francisco, and that such de-
livery to carrier was delivery to appellee. Appellant con-
tends that there was no evidence offered to prove the alle-
gation of defendant's answer that by oral agreement with
plaintiff the sugar was to be delivered to defendant at
Columbus, Nebraska. There is no reply to this answer.
No place of delivery is specified in the written contract of
sale, nor in the terms of sale indorsed thereon. This alle-
gation of the answer was therefore material. It was ad-
mitted by failure of appellant by reply to deny the same.
No evidence was necessary to establish the truth of that
allegation. The undisputed evidence shows that by the
bill of lading of the shipment, made by the appellant at
San Francisco, the sugar was consigned to Russell Broker-
age Company at Columbus, Nebraska. This consignee is
alleged by appellant and proved to be its agent. The sugar
was consigned, therefore, to the agent of appellant. This
in effect was consignment to itself by appellant. This
would not constitute delivery to appellee at San Francisco.
The appellee could not have maintained replevin for the
sugar on its arrival at Columbus, for it had no title to it
until order was received from the consignee, Russell Bro-
kerage Company, to deliver it to appellee. The evidence
is that when the sugar arrived at Columbus the Russell
Brokerage Company was notified by the railroad com-
pany's agent at Columbus, and thereupon said brokerage
company in turn notified the agent to turn the sugar over
to appellee. The consignee, the Russell Brokerage Com-
pany, might, while in transit, have diverted the shipment
to some other point. It might have caused it to be deliv-
ered to some other person than the appellee, to fill a sale
made to such other person.

The cases cited by appellant in support of its contention
that the sugar was delivered to appellee at San Francisco
on delivery to the carrier are cases in which the buyer was
named as the consignee in the bill of lading.

"Where a vendor of goods delivers them to a carrier for
transit to his vendee, and causes the goods to be consigned

in the bill of lading to himself, his agent, or his order, the presumption arises that he thereby intended to retain the title in himself to the goods." *Missouri P. R. Co. v. Lau,* 57 Neb. 559.

"Bills of lading are symbols of property, and, when properly indorsed, operate as a delivery of the property itself investing the indorsee with a constructive custody which serves all the purposes of an actual possession." *Union P. R. Co. v. Johnson,* 45 Neb. 57.

"A bill of lading taken deliverable to the shipper's own order is inconsistent with an intention to pass the ownership of the cargo to the person on whose account it may have been purchased." *Dows v. National Exchange Bank,* 91 U. S. 618.

The consignment of the car to appellant's agent must have been the method by which the appellant exercised its right to determine the limit of credit of purchaser before delivery of the car; this right being reserved to it by the terms and conditions of said sale printed on the back of the order for said sugar, which have hereinbefore been set forth.

The facts shown by the evidence in this case prove conclusively that the sugar was to be delivered to appellee at Columbus, and not at San Francisco, and that it was so delivered at Columbus.

The appellant also contends that, by the terms of the sale printed on the back of the order for the sugar, the appellee assumed the risk of loss in transportation from San Francisco to Columbus. The risk assumed by appellee by that clause of the terms and conditions of the sale is confined to loss and damage arising from sifting, leaking, breaking and chafing. No mention is anywhere made in the terms of sale of loss by theft or removal from the car. If the car contained 800 sacks of sugar when consigned at San Francisco, and but 715 sacks on arrival at Columbus, as found by the court, there must have been 85 sacks removed in transit. If the shipment had been made to the buyer as consignee, delivery to the common car-

rier at San Francisco would have been delivery to the buyer unless there was an express agreement to the contrary. In such case it would be unnecessary to provide in the terms of sale that such loss was assumed by the buyer. The law itself would place it upon the buyer. The sentence quoted in the terms of sale, "Seller's responsibility ceases upon delivery of goods to carrier," was properly held by the trial court to be confined to the loss and damage assumed by the buyer, in the sentence immediately preceding; that is, loss and damage arising from "sifting, leaking, breaking and chafing." This clause of the terms and conditions of sale was placed therein for the purpose of casting upon the buyer a loss which, without such provision, would be upon the consignee in cases where the buyer is not the consignee.

In case of loss by theft, the common carrier would be liable to the consignee. The common carrier would not be liable for loss from the causes herein specifically assumed by the seller. If the sentence, "Seller's responsibility ceases upon delivery of goods to carrier," was intended to relieve the seller of all responsibility for loss in transit, from whatever cause, why were the risks assumed by the buyer specifically mentioned? The provision as a whole clearly shows an intention to relieve the seller of the responsibility assumed by the buyer. The trial court was right in its construction of the terms of the sale, that loss from any other cause than that from sifting, leaking, breaking and chafing was the seller's loss. The evidence proves conclusively that the shortage of 85 sacks of sugar was not caused by sifting, leaking, breaking or chafing.

We find no error in the finding or judgment of the trial court.

Its judgment is

AFFIRMED.