P. BRAUFMAN, Doing Business Under the Firm Name and Style of Chicago Cash Store, Respondent, v. F. W. BENDER, E. R. Handel, P. P. Bender, and August Bender, Doing Business Under the Firm Name and Style of Richland Fruit Company, Appellants.

(225 N. W. 69.)

Opinion filed April 8, 1929. Rehearing denied May 3, 1929.

*V. H. Crane* and *Dullam & Young,* for appellants.

*Jacobsen & Murray,* for respondent.

Burr, J. The plaintiff conducts a store at Regent, this state, and in her complaint alleges the defendant on or about September 1, 1926 promised and agreed to ship to her a carload of grapes, delivered f. o. b. on cars at Regent, North Dakota, and she agreed to pay therefor the sum of $532.44; that the defendant warranted "that said grapes would be delivered at Regent, North Dakota, in first class and sound condition, and of good quality;" further that she advanced $200 on the purchase price and paid the freight upon said carload of grapes in the sum of $600; that the defendant did not ship the grapes agreed upon, nor deliver grapes in good or sound condition; "that on the contrary it shipped and delivered to the plaintiff a carload of grapes of an inferior quality and in a damaged and decayed condition; that by reason thereof plaintiff was unable to use or sell said grapes or dispose of them at any price; that by reason thereof plaintiff has been damaged in the sum of $800." So plaintiff asks judgment for $800 and costs.

The defendants answer admitting they sold plaintiff a carload of grapes for $532.44 but allege "that such sale was f. o. b. Shafter, California;" and that they "loaded a car with the kind and quality of grapes bought by the plaintiff, and that at the time of such loading and shipment such grapes were in sound condition."

At the close of the plaintiff's case the defendants moved for a directed verdict, renewing the motion at the close of the case.

The case was submitted to the jury for a general verdict, with three interrogatories for answer, as follows:

"Were the grapes in a damaged and bad condition at the time they were delivered to the carrier or railroad company at Shafter, California?"

"Were the grapes over ripe and too ripe for shipment at the time they were delivered to the carrier at Shafter, California?"

"Were the grapes damaged in transit by reason of improper transportation of the grapes by the railroad company?"

The jury returned a general verdict in favor of the plaintiff for $400, with interest, and answered the first and second interrogatories affirmatively and the last one negatively. Judgment was entered for the plaintiff. The defendants moved for judgment notwithstanding the verdict or for a new trial, which was denied. From the order denying this motion the defendants appeal.

There are seventeen specifications of error as follows: One, that the evidence is insufficient to sustain the verdict in nine different particulars; another, that the court erred in refusing to direct a verdict in favor of the defendant at the close of the case; thirteen with reference to the reception or rejection of evidence; another with reference to a portion of the charge; and the last dealing with the denial of the motion for judgment notwithstanding the verdict or for a new trial.

It is conceded that the contract between the parties was made by correspondence. On August 21, 1926 the plaintiff wrote to the defendants at Shafter, California as follows:

"Kindly let me know the best price you can make me on a car of Wine Grapes and *how soon you can ship* as I am in the market for Grapes."

On August 25, 1926 the defendants wired as follows:

"Answering letter quoting prices f. o. b. Shafter in car terms Two Hundred Dollars advance, balance before Bill of Lading delivered, Alicanti Seventy Dollars ton, Muscat Forty Dollars ton. Malaga Thirty-five Dollars ton. Thompson Thirty-five Dollars ton. First Zinfandel moved. Second crop too green. If interested wire."

The plaintiff then wired as follows:

"As per your telegram Aug. 26, ship car grapes, two hundred Malagas, two hundred Muscats, balance Thompson seedless. All Lidded Lugs. Wire if accepted. Will wire you two hundred dollars."

On September 10th the defendants wired:

"Will accept your order if you take it any time next week, but wire money at once so we can o. k. it. Will send bill of lading with draft

attached as soon as loaded. Use Western Union telegram night letter after this."

Shortly after the plaintiff wired:

"Bill car grapes to stop at Mott, North Dakota to part unload."

And later wired again:

"Include in car Fifty Lugs Red Wine Grapes. Zinfandel's preferred."

On the strength of this correspondence the defendants shipped a car of "juice" grapes to stop at Mott, N. D., for part unloading, delivering the grapes to the Sante Fe Railway Company, the bill of lading showing 176 lidded Muscats, 200 lidded Malagas, 50 lidded Zinfandels, 562 lidded Thompsons consigned to the Richland Fruit Co. and Chicago Cash Store, Regent, N. D., and being sent to Regent with a bank draft attached. The plaintiff wired the $200 advance payment and paid the freight and the draft.

It is the claim of the plaintiff the grapes were spoiled when the shipment reached Mott and so she wired the defendants.

"Car grapes arrived about one half spoiled. Wire to Regent what to do."

It will be noted plaintiff inquired about "wine" grapes. The answer of the defendants is not an acceptance of an order for "wine" grapes but is an offer to deliver certain kinds of grapes known as "juice" grapes, without specifying grade. The U. S. Standards, as prescribed by the department of agriculture, specify two general classes of grapes: "Juice" grapes, of which there are four grades, and "table" grapes, of which there are two grades. There is no contention on the part of the plaintiff that she ordered "table" grapes. It was "juice" grapes which the defendants offered to sell, and on which they quoted prices. This offer was accepted by plaintiff. It is "juice" grapes which are described in the inspection certificate issued by the U. S. Dept. of Agriculture and the State of California Dept. of Agriculture. This inspection certificate was issued at the time the shipment was in the hands of the transportation company, the inspection being made in the car. Nothing is said in the correspondence between the parties as to the grade of "juice" grapes involved in the contract. But the inspection certificate describes them as being "U. S. No. 1 Juice," being the best grade of "juice" grapes provided for by the standard.

The first proposition involves the time the title to the grapes passed. The court left to the jury the determination of the place of delivery. It is the contention of the defendant that this is error, the question being raised in the specification that the evidence was not sufficient to justify the verdict.

Defendants say they agreed to deliver the goods to the plaintiff at Shafter, California, and so delivered them, and that the sending of the bill of lading to the bank with the bank draft attached was merely for the purpose of reserving possession until the payment on the shipment was made and was not a reservation of title.

Under the provisions of § 6002a19 "where, in pursuance of a contract to sell the seller delivers the goods . . . to a carrier . . . for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the case provided for in the next rule (in Rule 5) and in § 20" of the Uniform Sales Act. "This presumption is applicable although by the terms of the contract the buyer is to pay the price before receiving delivery of the goods. . . ." There was nothing in the contract requiring the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight and therefore Rule 5 does not apply.

Section 20 (Laws 1917, chap. 202) is § 6002a20 of the Supp. and provides:

"The seller may, by the terms of the contract or appropriation reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier . . . for the purpose of transmission to the buyer." Section 6002a22 provides that "where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract the goods are at the buyer's risk from the time of such delivery." Defendant admits the force of the presumption regarding delivery to carrier f. o. b. Shafter but says the exception "unless a contrary intent appears" comes into play because defendants named themselves among the consignees and sent the bill of lading to the bank, to-

gether with a draft and the bill was not to be turned over until the draft was paid.

The phrase f. o. b. Shafter, in the absence of any other phrase or portion of the contract concerning the place of delivery, must be taken as the term used to regulate the delivery of the goods. The recognized commercial meaning of the term is such that there can be no dispute as to the meaning. Thus under such a term the goods were at the buyer's risk immediately upon delivery to the carrier. Standard Casing Co. v. California Casing Co. 233 N. Y. 413, 135 N. E. 834. This delivery to the carrier raises presumption of an "unconditional appropriation of goods to a contract of sale" subject to the provisions of the sales act which permits a reservation of the right of possession for the purpose of payment of the remainder of the purchase price. Alderman Bros. Co. v. Westinghouse Air Brake Co. 92 Conn. 419, 103 Atl. 267. Taking the bill to the order of the shipper with directions of delivery to the buyer only on payment of the draft was done solely to secure performance of the buyer's obligation to pay, and therefore does not evidence an intent contrary to the presumption which arises from the use of the term f. o. b. Shafter. The fact that the consignors are named among the consignees does not evidence an intent contrary to the one expressed by the term f. o. b. Shafter, and it will be noted the buyer paid the freight charge from Shafter. See Ranger v. Gildersleeve, 106 Conn. 372, 138 Atl. 142.

The plaintiff cites the case of Banik v. Chicago, M. & St. P. R. Co. 147 Minn. 175, 179 N. W. 899; and J. D. & A. B. Spreckels Securities Co. v. H. W. Abts Co. 108 Neb. 279, 187 N. W. 777, as determinative of this case. Neither is applicable. In the former case cited plaintiff was the seller, and delivered to the transportation company certain goods naming itself consignor and consignee. The transportation company delivered the goods to a third party on the order of the buyer and the seller claimed that owing to the nature of the bill of sale and of the contract the title had not passed. The lower court found title passed at the time of the delivery to the carrier and therefore the plaintiff could not maintain the action. Nothing is said about shipping f. o. b. but this was the precise term of the contract involved here. In the latter case there was a provision in the contract which the court held was the controlling limitation on the right of the buyer

and therefore there was no delivery to the carrier so as to pass title to the buyer. It was error to submit to the jury the question of the place of delivery.

The plaintiff insists that even if the sellers did not reserve title in themselves so that the provisions of the uniform sales act apply so far as making delivery to the carrier proof of transfer of title yet the goods were in damaged condition at the time they were delivered to the carrier, and the jury so found. The burden of proof is upon the plaintiff to show that the grapes as loaded into car at Shafter were not as ordered.

Plaintiff was entitled to receive a good kind and quality of juice grapes fit for that purpose. See § 6002a15, Supp. If such grapes were delivered at Shafter, then title passed there and then. There is nothing said in the contract as to the grade of juice grapes offered nor has the plaintiff made any attempt to show she was to get No. 1 juice grapes. She was not entitled to table grapes. The evidence shows that of the kinds of grapes ordered some could be used as table grapes and some were juice grapes, but a better condition is required for the table variety than for the juice variety. The United States standard for "U. S. No. 1 juice grapes" is as follows:

"Grades.

"U. S. No. 1 Juice Grapes.

"U. S. No. 1 Juice Grapes shall consist of grapes of one variety which are fairly well colored, mature, firmly attached to capstems, not split, crushed or wet; which are free from immature shot berries, raisining or raisined berries, sunburned or dried berries, waterberry, redberry, mold or decay, and from damage caused by mildew or other disease, insects or other means.

"In order to allow for variations incident to proper handling, not more than 15 per cent, by weight, of the berries in any lot may be raisining or raisined, provided, that not more than $\frac{1}{3}$ of this amount, or 5 per cent, may be raisined. In addition, not more than 10 per cent, by weight, of the berries in the lot may be below the remaining requirements of this grade, but not more than a total of 5 per cent, by weight may be seriously damaged, and not more than 2/5 of this

amount, or 2 per cent, may be affected by mold or decay, but in no case shall more than 10 per cent, by weight, of the bunches in any container have spots of mold or decay, affecting two or more contiguous berries."

"U. S. No. 1 mixed juice grapes" have the same requirements but may have mixed varieties of the same color. All of the evidence relative to the loading is given by defendant, and shows the grapes were picked and loaded the same day; that they were free from mildew or disease; that they conformed to the standard; and that the day they were loaded the car was inspected by the U. S. Inspector personally, who describes the quality and condition and says in his report: "Thompson and Zinfandels stock within tolerance for Grade. Malagas and Muscats stock well within tolerance for Grade —U. S. No. 1 (juice)." According to the record there is a vast difference between "juice" grapes and "table" grapes not only in the quality and required condition but also in the price. The evidence shows that table grapes are rarely sold by the ton but generally by the crate and the price is at least double what is charged for juice grapes. The expert for the plaintiff admits the table grapes cost much more than the juice grapes. Juice grapes are sold for jelly and juice, and use can be made of a quality inferior to the table grape because it is used for these specific purposes. It must be conceded that while the grade specifies a standard yet it provides for variations. The U. S. Inspector who inspected the grapes when loaded and issued the certificate says, with reference to variations:

"No grapes, of course, are perfect. And so a certain tolerance of defective stock is provided for in each grade which is not for the purpose of deliberately admitting defective stock but is for the purpose of providing for the imperfections that are common in grapes, and if the amount of defective stock falls within the limit provided or permitted by a certain grade it is graded as that grade and in this particular car the percentage of defective grapes, defective stock, fell within the limit of U. S. No. 1 Juice Grade and, therefore, this car was graded U. S. No. 1 Juice," and this is borne out by the U. S. Standards as established.

The testimony introduced by the plaintiff attempted to show the condition of the grapes when the car was opened at Mott, the method

and character of refrigeration and a reputed inspection at Butte and thus attempts to prove the condition when shipped. By the testimony of one Handel, the plaintiff attempted to prove the condition of the shipment from an inspection report made at Butte. The car was stopped at Butte for re-icing en route on the Milwaukee road. The testimony shows that this road had a contract or agreement with the Moorhead Inspection Bureau to inspect fruit cars and witness testified that exhibit 17 was the report furnished by one R. T. Ungerer, now deceased. The report was produced from the files of the railroad and introduced in evidence over the objection of the defendant, but the reception of the exhibit is not specified as error. There is no testimony regarding this exhibit other than it is a duplicate copy of the report furnished by this man Ungerer as representative of the Moorhead Inspection Bureau. Outside of the instrument itself there is nothing to indicate any inspection. We do not know his qualifications, the character of the inspection or its thoroughness. The report says:

"White Juice grapes in sight. Muscats show 10 to 15 per cent shriveled skins raising 2 per cent broken skins, with Rhizopus disease, mold in early stage. The Thompson Seedless Juice grapes are very poor, very ripe. Show at least 20 per cent shriveled skins, 2 per cent red berries and 2 per cent broken skins with decay and Rhizopus disease mold in advanced stage. No teakers in sight. Well spaced. No broken lugs in sight."

It must be evident the probative value of this report is slight and in any event it throws little light upon the toleration allowed and gives scant information as to whether the grapes were No. 1, No. 2 or below grade. The plaintiff did not testify but her husband who claims to be managing her business testified he opened the car, and inspected it. He describes in general terms the condition of the grapes at the time he opened the car. He says: "The grapes were moldy and the juice was running out of them just like water." He attempted to tell "the reason for those grapes arriving in that condition," and over the objection of the defendant that he had not shown himself competent to testify the court permitted the witness to give his opinions as to how they were shipped, how they had been loaded, and what must have been the condition when shipped. Specifications of error 3, 4, 5 and 6 cover this point and are well taken. The witness made no attempt to show

what percentage of the shipment when he inspected the car at Mott was outside of the tolerance allowed for this grade. He showed no qualification and it was error to permit him to testify as an expert.

The plaintiff produced one Ames as witness. Mr. Ames is a wholesale fruit dealer at Mobridge and has been in the business for several years. He qualified as an expert and attempted to describe the condition of the shipment when the car was opened at Mott. He makes no attempt to tell the percentage of mold and he admitted that he was not qualified to tell "whether or not there is a classification of grapes by the government according to grades," although had heard of grade No. 1 juice grapes and knew it was used for wine purposes or jelly. He does say that when he looked the shipment over the grapes were overripe and he "would say 10 or 15 or 20 per cent turned to raisins." No one else testifies as to the condition of the shipment when the car was opened at Mott. There is the attempt on the part of the witnesses for the plaintiff to show that because of the condition of the shipment when the car was opened at Mott the grapes must have been in poor condition when loaded but the testimony is vague, indefinite and largely wanting in precision and as it must be evident juice grapes would not have the appearance, or condition required of table grapes.

The plaintiff presented testimony showing the refrigeration of the car en route and thus attempted to show that the condition of the grapes when received could not have been caused by the negligence of the transportation company, but this does not supply the lack of proof that the condition when received varied from the condition required to the extent necessary to reduce the shipment below the standard accepted by the trade.

It is true the jury answered interrogatories one or two in favor of plaintiff but these interrogatories do not submit the grade ordered or received, nor is there competent proof upon which the jury could act. Thus there is no competent testimony to overcome the testimony offered by the defendant showing the grapes shipped to be U. S. No. 1 juice.

As noted before the court required the jury to determine whether the title passed to the plaintiff at Shafter, California or at Regent, and charged "if you find that the place of delivery was at Regent, North Dakota, and that when the grapes reached Regent, North Dakota they were in damaged condition, then your verdict should be for the plain-

tiff," and again "if the carload of grapes was actually delivered to the defendant at Regent, North Dakota, then the defendant would be responsible for any damage to the goods which occurred in transit." The issue to be determined by the jury was whether the grapes were up to standard when delivered to the plaintiff at Shafter. There is nothing in the testimony which shows what the difference in price would be between U. S. No. 1. juice grapes, and U. S. No. 2 juice grapes or U. S. No. 1 mixed juice grapes and U. S. No. 2 mixed juice grapes so we cannot determine the grade by this means. There is nothing in the testimony to show which grade the plaintiff was to receive and therefore before the plaintiff could recover in this case, she must show she did not get grapes up to any of these grades.

It is not necessary to pass upon the specification of error based upon instructions to the jury. We are satisfied that defendant is entitled to a new trial, and so the judgment is reversed and a new trial granted.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.