## WASHINGTON ELECTRIC COOPERATIVE, Inc. v. NORRY ELECTRIC CORP.

No. 82, Docket 22041.

United States Court of Appeals, Second Circuit.

Submitted Nov. 7, 1951.

Decided Dec. 26, 1951.

Bunis & Bunis, MacFarlane, Harris & Goldman, Rochester, N. Y., Ruben A. Dankuff, Rochester, N. Y., of counsel, for defendant-appellant.

Whitbeck & Holloran, Rochester, N. Y., Walter J. Holloran, Rochester, N. Y., on the brief, for plaintiff-appellee.

Before SWAN, Chief Judge, FRANK, Circuit Judge, and COXE, District Judge.

SWAN, Chief Judge.

This is an action to recover the unpaid balance of the purchase price of six Diesel generators sold to the defendant on November 22, 1948, plus incidental damages sustained by the seller. Federal jurisdiction rests on diverse citizenship. The attorneys have stipulated that the action was governed by the terms of the Uniform Sales Act as adopted by the state of New York, N. Y. Personal Property Law, McK.Unconsol.Laws, c. 41, art. 5. The case was tried to the court without a jury, and the trial resulted in a judgment for the plaintiff in the sum of $10,293.94. Of this total $8,000 was the deficiency arising upon resale of the generators for the buyer's account; $432 was a personal property tax levied upon the generators on April 1, 1949, while they were in the possession of the seller, and paid by the seller; $625 was an allowance for storing the goods in a building owned by the seller; and the remainder was interest and costs.· The facts as found by the district court are not disputed but numerous attacks are directed· to its conclusions of law.

■ The appellant first contends that no contract of sale ever came into existence because there was no unequivocal acceptance of the buyer's offer to purchase. This is apparently an after-thought. At the trial the buyer contended only that the resale of the generators for its account was not made within a reasonable time after its alleged breach of the contract of sale. Assuming that nevertheless it may on appeal contend that no contract of sale was created by its offer and the seller's purported acceptance thereof, the contention is not well founded. The offer, following prior negotiations, described the goods, named the purchase price, $20,000, called for shipment "F O B Truck," was accompanied by a check for $2,000, stated "Balance before shipment in (2) Weeks," and concluded "Please Wire us decision Monday Nite." The timely telegram of acceptance dated November 22, 1948, read "Board accepts proposal for immediate delivery subject to balance paid before shipment F. O. B. Common Carrier, East Montpelier, Vermont." It is argued that the acceptance cut down the period of shipment from two weeks to "immediate delivery." But delivery still remained "subject to balance paid before delivery," and since the offer proposed that the balance should be paid before shipment, the time of shipment was not altered by the acceptance—it still depended on the buyer's election when to pay the balance within the two weeks.

It is also argued that "F. O. B. Common Carrier" was not an acceptance of the offered term "F. O. B. Truck." A truck may be either a private carrier or a common carrier. We interpret the telegram of acceptance as showing the seller's understanding that the offer called for shipment by a common carrier truck, not as indicating an intention by the seller to reserve to itself an election to ship by either truck or railroad. This interpretation is consistent with the subsequent conduct of the parties. By letter dated December 13, 1948, the seller requested shipping instructions and payment of the balance of the purchase price. Nothing in the ensuing correspondence suggests· that the words "Common Carrier" had introduced a term different from that of the offer. As already stated the present argument is merely an after-thought. We agree with the district court that the offer and acceptance created a binding contract of purchase and sale.

■■ It is next contended that under the terms of the contract title to the generators never passed to the buyer, and, consequently, resale for the buyer's account, as provided in § 141 of the Uniform Sales Act, N. Y. Personal Prop. Law, Art. 5, was not an available remedy. The contract related to "specific goods" as defined in § 156 of the Act, for the buyer's offer identified the goods precisely as they had been described in the seller's letter which listed the generators it had for sale. Where there is a contract to sell specific goods the property in them passes to the buyer at such time as the parties intend. Sec. 99. Unless a different intention appears the rule is that the property in specific goods, in a deliverable state, passes "when the contract is made and it is immaterial whether the time of payment, or the time of delivery,

or both, be postponed." Sec. 100, Rule 1. The appellant argues that the F. O. B. term of the contract discloses an intention that title should not pass until delivery of the goods to a carrier, and this never occurred, the buyer having repudiated the contract before it had given shipping instructions or paid the balance of the price. But the cases cited in support of this argument do not involve a contract to sell specific goods in a deliverable state. Where, as here, the contract does involve specific goods the F. O. B. provision does not preclude application of section 100, Rule 1. See Woodbine v. Van Horn, 29 Cal.2d 95, 173 P.2d 17, 24; Alderman Bros. Co. v. Westinghouse Air Brake Co., 92 Conn. 419, 423, 103 A. 267. We see no reason to disagree with the trial court's conclusion that title to the generators passed to the buyer at the time of acceptance.

The right of an unpaid seller to resell the goods is given by sec. 134 of the Act and is exercisable as provided by sec. 141. Subdivision 1 of sec. 141 permits a resale if the buyer has been in default an unreasonable time. Notice of the proposed resale was given the buyer on March 22, 1949 and the goods were resold on April 11, 1949 for $10,000.

■ The appellant attacks the resale on two grounds. It argues, first, that the seller's letter of December 13, 1948 was an election to rescind the contract of sale and to forfeit the buyer's $2,000 partial payment, and that having elected to rescind, the seller cannot later request relief under sec. 141. The letter is printed in the margin.[1] It will be observed that the letter speaks only of what may happen in the future if the final payment is not made and shipping instructions sent "this week." Any sale "to some one else" was conditioned on whether the directors of the seller should act favorably on the recommendation the manager intends to present to them on December 20 if the buyer has not made good its defaults before that date. And the buyer's reply dated December 15th shows plainly that it did not consider that its $2,000 payment had been forfeited. It refused to perform the original contract but offered to make a new one at a price of $15,000 to be paid by the $2,000 paid under the original contract plus $13,000 additional. The seller's letter of December 17 shows that it regarded the original contract as still existing. We see no merit what ever in the rescission argument.

■ The appellant next argues that even if there was no rescission the resale was improper because too long delayed after the buyer's breach. The buyer was in default in payment two weeks after November 22, 1948, that is, on December 7th. Thereafter the seller continued to correspond with the buyer in the hope of getting payment in full or a settlement. The correspondence was terminated by the buyer on February 2, 1949. We think the resale was not unreasonably delayed. Moreover, the burden of proving that the resale was unreasonably delayed and that the buyer suffered therefrom is on the buyer. Higgins v. California Prune & Apricot Growers, 2 Cir., 16 F.2d 190, 193, petition for certiorari dismissed on stipulation, 273 U.S. 781, 47 S.Ct. 460, 71 L.Ed. 889. No such proof was offered.

The contention that there was no adequate proof of the rental value of the building in which the generators were stored is

[1]         "Co-Op
"Washington Electric Co-Operative, Inc.,
  "30 Depot Sq.          Barre, Vt.
                "December 13, 1948
"Mr. Irving S. Norry
"Electric Equipment Company
"P. O. Box 51
"Rochester 1, New York
"Dear Mr. Norry:
  "We have been holding the diesel equipment that you made a deposit on for some time and have expected that you would advise as to shipment and, also, make final payment.
  "Failure to make final payment and send shipping instructions this week will result in forfeiture of your deposit. Our next board meeting is on December 20 and I will have to recommend to the directors that they sell to someone else unless provisions in your purchase order are taken care of.
                "Very truly yours
          "(Signed) Frank M. Sahlman
                "Manager"

without merit. It is mentioned merely to indicate that it has not been overlooked.

 We agree, however, with the appellant's claim that the judgment is erroneous in respect to certain items which it includes. Interest on the $8,000 deficiency resulting from the resale was figured from the date of the contract, November 22, 1948. The appellant says it should be figured from the date of the breach, December 15, 1948. This is correct. Recomputation reduces the interest on this item by $30.25. The seller was allowed $625 for storing the generators from November 22, 1948 to April 11, 1949, with interest thereon from October 3, 1949, the commencement of the action. Until the buyer repudiated its contract on December 15th, storage of the goods was for the seller's account, not the buyer's. The allowance should be reduced to $500 with interest from October 3, 1949. This decreases the judgment by $125 plus interest thereon of $9.48. The total decrease is $164.73. The judgment is modified by reducing the total of $10,293.94 to $10,129.21 and as thus modified is affirmed.